378 So.2d 274 (1979)
Derrick Mo'Mey MANNING, Appellant,
v.
STATE of Florida, Appellee.
Nos. 51098, 52782.
Supreme Court of Florida.
November 21, 1979.
Rehearing Denied January 28, 1980.
Robert G. Murrell of the Law Offices of Sam E. Murrell & Sons, Orlando, for appellant.
Jim Smith, Atty. Gen., and Richard W. Prospect, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Appellant, Manning, was convicted of the premeditated murder of two Columbia County sheriff's deputies and sentenced to death. We have jurisdiction to review this case under article V, section 3(b)(1), Florida Constitution. We determine that the trial court abused its discretion in denying appellant's motion for change of venue.
In the early morning of July 6, 1976, two sheriff's deputies were killed while investigating an alleged attempted sexual battery. Shortly after the officers were shot, appellant Derrick Manning, a twenty-three-year-old black male from another county, was stopped, arrested, and charged with the two murders. The deputies found a .22 caliber automatic rifle similar to that used in the killings in Manning's vehicle at the time of his arrest. Manning made incriminating statements to the police concerning his involvement in the crime. He alleges that these statements were the result of police coercion, beatings, and threats against his life. Upon the advice of the local state attorney, the Governor of Florida requested a transfer of appellant to a county jail outside Columbia County in order to ensure the appellant's safety while awaiting trial. The trial court ordered the transfer. These tragic deaths became the "main topic of conversation" in this small rural community. *275 Coverage of this crime by local news media was intense.
The sheriff's department and state attorney's office released to the press their versions of the facts and circumstances in the shooting incident. In addition, the prosecutor released to the press the names of the primary witnesses to the crime. The prosecutor told the local newspaper the substance of the initial testimony given to the state attorney's office by these alleged eyewitnesses. Similarly, the sheriff discussed evidence gathered during the investigation, including in his statements conclusions implying a total lack of justification on behalf of the appellant in the shootings. The versions of the incident related by the sheriff and prosecutor to the local newspaper were in conflict with the version of the events given by the appellant in a statement to law enforcement officials shortly after his arrest.
Appellant was represented in these trial proceedings by an Orlando law firm. The local public defender's office was granted a request to be dismissed from handling the defense apparently because of friendships with the slain police officers. Appellant's attorney filed a motion for change of venue, alleging that a fair and impartial trial could not be conducted in Columbia County; that there had been wide publicity given to the case through the newspapers published or circulated in Columbia County; that by reason of the inordinate publicity by these newspaper accounts concerning the offense, there was pronounced prejudice and hostility towards the accused which would make the securing of an impartial jury practically and psychologically impossible; that the general state of mind of the inhabitants of Columbia County was affected by knowledge of the incident, which was accompanied by such prejudice, bias, and preconceived opinions that it would not be possible to obtain a fair and impartial jury; that the defendant would not receive a fair and impartial trial in Columbia County because of undue prejudice and sympathy for the alleged victims; that the alleged victims and their families were residents of Columbia County whereas the defendant was not a resident; that the alleged victims were law enforcement officers employed by the county sheriff's office, and there had been widespread discussion and comment among the citizens of Columbia County to the prejudice of the defendant; and, that by reason of the crime charged, it was necessary for the safety of the defendant that he be transferred to a jail outside Columbia County upon the advice of the state attorney and the Governor of Florida. The defense attached various newspaper articles to the motion, as well as affidavits of fifteen persons, including the defendant, stating that because of bad feelings and prejudice against the defendant and because of the adverse publicity concerning the case, the affiants were convinced by reason of personal observations and knowledge of the conduct and statements by various persons in Columbia County that the defendant could not receive a fair and impartial trial in that county. In addition, the defendant alleged that local police officers made various threats against his life, physically and verbally abused him, and harassed his mother when she came to visit him in jail. The state attorney filed a traverse in opposition to the defendant's motion for change of venue, alleging that the transaction out of which the charges arose had not been given undue publicity in the area to such extent that a change of venue was required, and that the only way to determine whether an impartial jury could be successfully chosen was to attempt to impanel one. The prosecutor attached affidavits of residents of that area alleging that the defendant could receive a fair trial in the community. The trial court denied the motion for change of venue conditioned upon the ability to select a fair and impartial jury. The voir dire inquiry established that every member of the jury panel had prior knowledge of the alleged crimes through news media accounts and community discussion. The jury ultimately selected found the appellant guilty and recommended the imposition of the death penalty.
Recently, in Hoy v. State, 353 So.2d 826 (Fla. 1977), this Court rejected an assertion *276 that the trial court erred in denying a motion for change of venue because of extensive pretrial publicity. During the voir dire in that case, the prospective jurors were questioned extensively as to their prior knowledge of the case. That record disclosed that a great many of the prospective jurors had heard nothing about the case. The allegedly inflammatory articles were contained in the local Clearwater paper, whereas most of the prospective jurors who had prior knowledge of the case had read brief accounts of it in the St. Petersburg paper. This Court determined from the record that there was a lack of evidence showing a significant inflammatory atmosphere in the community. The jurors who were chosen were completely impartial and were not prejudiced by pretrial publicity. None of the jurors had read any of the alleged inflammatory articles.
Similarly, claims of prejudice for failing to change venue were rejected in McCaskill v. State, 344 So.2d 1276 (Fla. 1977); Dobbert v. State, 328 So.2d 433 (Fla. 1976); aff'd Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977); Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Thomas v. State, 374 So.2d 508 (Fla. 1979).
In McCaskill v. State, this Court adopted the test set forth in Murphy v. Florida and in Kelley v. State, 212 So.2d 27 (Fla.2d DCA 1968), for determining whether or not to grant a change of venue. According to that test, a determination must be made as to whether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely on the evidence presented in the courtroom.
An application for change of venue is addressed to the sound discretion of the trial court, but the defendant has the burden of coming forward and showing that the setting of the trial is inherently prejudicial because of the general atmosphere and state of mind of the inhabitants in the community. A trial judge is bound to grant a motion for a change of venue when the evidence presented reflects that the community is so pervasively exposed to the circumstances of the incident that prejudice, bias, and preconceived opinions are the natural result. The trial court may make that determination upon the basis of evidence presented prior to the commencement of the jury selection process, see Rideau v. Louisiana, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963), or may withhold making the determination until an attempt is made to obtain impartial jurors to try the cause. Murphy v. Florida.
The motion for change of venue in this case was amply supported by evidence which established that the community was so pervasively exposed to the circumstances of this incident that the defendant could not secure a fair and impartial trial in Columbia County. Every member of this prospective jury had knowledge of exparte statements of the evidence against the accused. The record further reflects that hostility existed in the community against the accused to the extent that it would be difficult for any individual to take an independent stand adverse to this strong community sentiment. The fact that the victims were well-liked caucasian deputies of the local sheriff's department and the accused was a young black male from outside the community clearly magnified the problems involved in securing a fair trial in Columbia County. The facts in this case are clearly distinguishable from the factual circumstances existing in McCaskill v. State, Hoy v. State, Thomas v. State, Kelley v. State, Murphy v. Florida, and Dobbert v. Florida. These were different facts under different circumstances, not the least of which was the fact that this incident occurred in a rural community where it is apparent that the incident had received substantially more attention than if the same incident had occurred in a metropolitan area. Each case must be judged on its own merits as to whether, under the circumstances, the inhabitants of the community are so infected by knowledge of the incident and accompanying *277 prejudice that jurors from the community could not possibly try the case solely on the evidence presented in the courtroom. We have determined from the record in the instant case that the general atmosphere in this rural community was sufficiently inflammatory to require the trial court to grant a change of venue, and his failure to do so constituted an abuse of discretion.
Our state and federal constitutions guarantee to criminal defendants a right to a fair trial by an impartial jury. As this Court noted in Singer v. State, 109 So.2d 7, 14 (Fla. 1959):
Every reasonable precaution should be taken to preserve to a defendant trial by such a jury and to this end if there is reasonable basis shown for a change of venue a motion therefor properly made should be granted.
A change of venue may sometimes inconvenience the State, yet we can see no way in which it can cause any real damage to it. On the other hand, granting a change of venue in a questionable case is certain to eliminate a possible error and to eliminate a costly retrial if it be determined that the venue should have been changed. More important is the fact that real impairment of the right of a defendant to trial by a fair and impartial jury can result from the failure to grant change of venue.
This Court further discussed in Singer the difficult and frequently encountered conflict between the rights of a defendant to a fair trial by an impartial jury and the constitutional freedom of the press to disseminate news to the public. There, this Court said:
Irrespective of whether the press determines to limit the scope of its pre-trial publication of such events there are other avenues through which the problem must be attacked.
Prosecuting officials, being lawyers, are strictly prohibited ... from making for publication statements which pertain to pending or anticipated litigation for the reason that such statements may interfere with a fair trial. All prosecutors must observe this canon and the courts must enforce its observation.
Law enforcement officials likewise must be required to abstain from making pre-trial statements regarding the details of crimes under investigation by them, which statements tend to establish the guilt or innocence of one accused of the crime. There is nothing to prevent announcement of the commission of a crime or of an arrest of one suspected of committing it, but they should not publish matters relating to evidence which they have acquired, statements attributed to witnesses, or statements or confessions attributed to an accused. Publication of such statements, evidence or confession forms the basis for trial by newspaper. Further, such statements, evidence or confession either may not be submitted at the trial, or if offered may not be admitted, yet if those who sit on the jury have read the press version of them it is most difficult, if not impossible, for the human mind not to fill in from its extrajudicial knowledge that which is not offered at the trial or to determine the veracity of a witness by comparing the newspaper version of the facts with the testimony given at the trial. It is a tribute to the press that most believe as true what is written or spoken by the press media, yet it must be admitted that press reports are not always accurate and are seldom complete. Further, the accused has no means to answer them, nor is there any appeal from conviction on trial by newspaper.
Id. at 16, 17.
Recently, in Nebraska Press Association v. Stewart, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), the United States Supreme Court discussed at length this historical conflict between freedom of the press and the right of a defendant to an impartial jury. The court noted that prior restraints as to what the news media may publish about a pending criminal trial are held in disfavor. Such restraints on the press were disapproved, not because such first amendment rights are held to preempt sixth amendment rights of criminal defendants *278 but rather because states have at their disposal alternative methods of protecting accused persons from the prejudicial effect of such pretrial publicity without imposing such great burdens on the news media's constitutional rights. Citing its prior decision in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1968), the court stated that a trial court has a duty to protect a defendant's constitutional right to a fair trial by using various alternatives to prior restraint of publication, including change of venue to a place less affected by such pretrial publicity. The court recognized that all pretrial publicity does not inevitably lead to an unfair trial. Rather, the capacity of the jury eventually impaneled to decide the case fairly is influenced by the tone and extent of the publicity which is in part, and often in large part, shaped by what attorneys, police, and other officials do to precipitate news coverage. However, citing Irvin v. Dowd, 366 U.S. 717, 728, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), the court emphasized that when a defendant's life is at stake, it is not requiring too much that the accused be tried in an atmosphere undisturbed by so huge a wave of public passion.
Although the evidence against the defendant in the present case is quite strong, it is possible that another jury uninfluenced by the passion existing in Columbia County at the time of this trial might have reached a different verdict. Because this record reflects a strong community sentiment, intensified by pervasive pretrial publicity which may have improperly influenced this jury's verdict and the recommendation of death, we determine it necessary to remand this case for a new trial in a location other than Columbia County.
Our disposition of the case on the change of venue issue makes discussion unnecessary at this time of other serious issues involving the lawfulness of the arrest and searches.
It is so ordered.
ENGLAND, C.J., and OVERTON, SUNDBERG and McDONALD, JJ., concur.
ENGLAND, C.J., concurs with an opinion.
ALDERMAN, J., dissents with an opinion, with which ADKINS and BOYD, JJ., concur.
ENGLAND, Chief Justice, concurring.
The majority has not commented on the introduction of several allegedly gruesome photographs which Manning claims were introduced solely to influence the jury, inasmuch as any discussion of that subject is unnecessary to the opinion. I would hope that on retrial, however, the prosecution will consider the views on cumulative photographic evidence with only marginal relevance which I expressed in Funchess v. State, 341 So.2d 762, 763 (Fla. 1976).
ALDERMAN, Justice, dissenting.
I agree with the general principles of law expressed in the majority opinion. In order to be entitled to a change of venue, the defendant must carry the burden of coming forward and showing that the trial of this case in Columbia County would be inherently prejudicial because of the general atmosphere and state of mind of the inhabitants in the community. I also agree that a trial judge is bound to grant a change of venue only when the evidence presented reflects that the community is so pervasively exposed to the circumstances of the incident that prejudice, bias, and preconceived opinions are the natural result. I likewise agree that the trial judge may make his determination based upon the evidence presented prior to the commencement of the jury selection process, or he may withhold that determination pending an attempt to obtain impartial jurors to try the cause.
In support of his motion for change of venue, the defendant presented evidence from which the trial judge might have concluded that it would not be possible to obtain a fair and impartial jury in Columbia County. At that point, the trial judge, in the exercise of his discretion, might have granted the defendant's motion for change of venue. Instead, as was his right, he *279 elected not to make that decision until after an attempt was made to obtain an impartial jury. At that point in time, no one knew for sure whether it was possible to obtain an impartial jury. The conclusory allegations in defendant's motion for change of venue were, of necessity, based upon speculation. Although there probably were some people in Columbia County who, because of their knowledge and preconceived opinions of this incident, could not have served as fair and impartial jurors, it was likewise probable that there were a sufficient number who were qualified to serve. The fact that a prospective juror has read or heard something about the crime charged does not necessarily mean that he is prejudiced, biased, or has a preconceived opinion. A person need not be unaware of what is going on in his community in order to serve on a jury. If such were the case, a jury would have to be composed of the most illiterate, ignorant, and unconcerned members of the community. We would have to eliminate all prospective jurors who read newspapers, who listen or watch news reports on radio and television, or who otherwise are aware of and are concerned with what is going on in the world around them.
Fortunately, the privilege and the duty of jury service are not reserved exclusively for the illiterate, the ignorant, and the uncaring; otherwise, the jury system could not long survive. The fact that a prospective juror has read or heard something about the defendant or the facts of the alleged crime does not disqualify that person from jury service. To be qualified, it is only necessary that the prospective juror be impartial and be able to base his verdict solely upon the evidence properly before the jury.
In some cases, it is not advisable for the trial judge to rule on a motion for change of venue until after the jury selection process actually begins. This is the "acid test" to determine if it is possible to obtain a fair and impartial jury. During the jury selection process, the trial judge is in the best position to make the final decision as to whether a fair and impartial jury can be obtained. He has the opportunity to observe firsthand the prospective jurors during the voir dire examination, to weigh the credibility of their answers, and to judge the state of their minds as well as the general atmosphere in the courtroom and the community.
Judging of this type is an art, not a science. It is not possible to reduce all of the elements considered by a trial judge in such a situation to a computer card and obtain a mechanistic answer. In deciding a motion for change of venue, more is involved than the sterile application of legal principles. The trial judge must also function as the finder of facts.
Turning now to the present case, the majority has determined that the general atmosphere in this rural community was sufficiently inflammatory to require a change of venue and that the trial judge's failure to do so was an abuse of discretion. In doing so, the majority has substituted its judgment for that of the trial judge. I prefer to accept the evaluation of the trial judge who was actually in the courtroom when the jury was selected. A review of the transcript of the voir dire examination reveals that there was no real difficulty in finding twelve jurors acceptable to the defendant. The voir dire was no different than those which trial judges are accustomed to hearing on a day-to-day basis in the courtrooms across the state. The defendant did not exhaust his preemptory challenges and accepted the jury without renewing his motion for change of venue. In fact, defense counsel, Robert Murrell, prior to accepting the jury, stated, "[I]t would appear to us that we have a fair and impartial jury here."
The fact that the defendant was convicted does not mean that his jury was not fair and impartial. The majority concedes that the evidence against the defendant is quite strong. Even the defendant does not argue that he did not kill the law enforcement officers. It is pure speculation that another jury in another county might possibly have reached a different verdict, and even if another jury might have reached a different verdict, that would not entitle the defendant *280 to a new trial. The same could be said for any defendant who has been found guilty by a jury. It is always possible that another jury at another time and at another place might reach a different verdict.
I would hold that the trial judge did not abuse his discretion when he failed to grant defendant's request for change of venue.
ADKINS and BOYD, JJ., concur.