457 So.2d 1012 (1984)
Johnny COPELAND, Appellant,
v.
STATE of Florida, Appellee.
No. 57788.
Supreme Court of Florida.
September 13, 1984.
Rehearing Denied November 15, 1984.
*1014 Clifford L. Davis, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and David P. Gauldin, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Johnny Copeland appeals his convictions for first-degree murder, kidnapping, robbery, and sexual battery. For the capital felony of first-degree murder the judge sentenced appellant to death, thus vesting this Court with jurisdiction of the appeal. Art. V, § 3(b)(1), Fla. Const. The trial court imposed separate sentences of life imprisonment for each of the other three crimes.
The evidence at trial showed that during the night of Tuesday, December 12, 1978, Sheila Porter, who was nineteen years of age, disappeared from her job as cashier at the Junior Food Store in Medart, in Wakulla County. At shortly after eleven o'clock that night, the store was found to be unattended and unlocked. Money was missing from the cash register. Shortly before Sheila Porter's disappearance was discovered, several witnesses who had been at the store saw a large white car  identified by one of them as a nine- or ten-year-old Chrysler Newport  with two or three black men inside parked in front of the store.
On Wednesday, December 13, an informant, having heard on television of the possible abduction and a description of the car, told police that he had seen such a car in the possession of Frank Smith, that appellant Johnny Copeland was with Smith, and that later that day he had seen the car again but it had been painted black. This informant was one of the state's witnesses at trial. In response to this information, an investigator from the Wakulla County Sheriff's Office contacted Smith and appellant and asked them to accompany him to his headquarters. The investigator who conducted the interviews testified at the trial. In his first statement appellant denied any participation in the crime, stated that he had spent the previous evening visiting family members, and denied helping Smith paint his car black. Later he admitted that he had helped paint the car black. After being at the sheriff's office for more than nine hours, appellant was released early in the morning of Thursday, December 14.
After receiving further information linking Frank Smith's car to the scene of the suspected abduction, sheriff's deputies arrested appellant at 4:00 a.m. on Friday, December 15. In the interrogation that followed, he said that he had given in to Frank Smith's demand that he help him with a robbery. He said that Smith came to his home, that he went with Smith in Smith's car, and that along the way they picked up Victor Hall and another man whom appellant did not know and could not identify because he wore a mask. Appellant *1015 said that they drove to the convenience store in Medart and that he went in and performed the robbery by threatening the girl with a knife. They abducted the girl and returned to appellant's house where he got his own car. Then, appellant's statement continued, they went to a motel just outside Tallahassee where Smith, Hall, and the masked man raped the girl. Then, taking appellant's car, Smith, Hall, and appellant took the victim to a wooded area outside Tallahassee where Smith shot her.
Appellant took investigating officers to the vicinity of the murder. As they tried to locate the body, appellant said that it was Smith and the masked man who took the victim from the car into the woods. After having been shown the general vicinity of the murder by both appellant and Smith independently, the police located Sheila Porter's body by aerial search on Friday, December 15. A pathologist examined the body and determined that the victim had been shot three times in the head. The genital area of the body had been bruised. The bullets removed from the body were determined to be .25 caliber bullets. Three shell casings were found near the body and were determined to be Federal brand .25 caliber semi-automatic pistol ammunition.
Police investigators interviewed appellant again on the day following the discovery of the body. This time appellant said that there had been no masked man, but that the remainder of his previous statement was true. In a later statement appellant again changed his story, saying that he had used a pistol, not a knife, when he committed the robbery.
In addition to the testimony of an investigating officer, repeating what appellant said in his series of statements, the state also presented a substantial amount of corroborating evidence. Appellant's uncle testified that on the Saturday before the crimes he returned to appellant a pistol which appellant had given him as security for a loan. At that time appellant discharged the gun in his uncle's yard. Later investigating officers searched the area where the gun was fired and recovered a spent shell. A firearms expert testified that this shell was fired from the same gun as the shells found near the victim's body.
A fingerprint specialist found appellant's prints inside the motel room where Sheila Porter was raped. The expert also found a print from the victim on an aluminum can found under the seat of appellant's car. A fiber analyst testified that fibers matching those of the victim's clothes were found in Frank Smith's car.
The victim's body was examined not only by a pathologist but also by a serologist. The serologist testified that an examination of substances found in the vaginal area and on the underpants of the victim revealed the presence of semen in amounts indicating that sexual intercourse had occurred shortly before the victim's death. There was also testimony from a witness who testified that he visited appellant in jail and that appellant admitted that he participated in the multiple rape but denied that he killed the girl.
Having reviewed the record of the evidence establishing the above-recited facts, we find that the verdicts of guilt for robbery, kidnapping, rape, and first-degree murder are supported by competent, substantial evidence.
In his appeal, appellant raises questions concerning the constitutionality of the death penalty statute, the proper place of venue, the selection of jurors, the admission of his incriminating statements, a reference to unrelated criminal conduct, and the imposition of his sentences. We find that appellant has failed to establish any reversible error affecting his convictions. However, we do find that the trial court erred in imposing separate sentences for all three non-capital felonies in addition to the death sentence for the capital felony. Under the evidence, the first-degree murder rests on the felony murder theory. Therefore there can be no separate sentence for the underlying felony. State v. Hegstrom, 401 So.2d 1343 (Fla. 1981).
Appellant argues that the death penalty statute is unconstitutional on the *1016 grounds that this Court does not review all first-degree murder cases, that the death penalty is cruel and unusual punishment, and that the capital felony sentencing law, as applied, denies equal protection to black defendants accused of killing white persons. All of these arguments have previously been considered and decided adversely to appellant's position. See Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976); Spinkellink v. Wainwright, 578 F.2d 582 (5th Cir.1978), cert. denied, 440 U.S. 976, 99 S.Ct. 1548, 59 L.Ed.2d 796 (1979); Dobbert v. State, 375 So.2d 1069 (Fla. 1979), cert. denied, 447 U.S. 912, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980).
Appellant argues that the exclusion from jury service on his case of all veniremen whose views on capital punishment were such as to preclude them from assuming the duties of a juror in a capital case as such cases are prosecuted under Florida law deprived him of the right to be tried by a jury representative of the community. This argument too has already been considered and rejected in previous decisions of this Court. See Gafford v. State, 387 So.2d 333 (Fla. 1980); Downs v. State, 386 So.2d 788 (Fla.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 238 (1980); Riley v. State, 366 So.2d 19 (Fla. 1978).
Before trial appellant filed an election of venue seeking to be tried in Leon County. He now argues that the trial court erred in denying his request. However, because the robbery and kidnapping occurred in Wakulla County and the rape, continued kidnapping, and murder occurred in Leon County, the cause could have been prosecuted in either county. § 910.05, Fla. Stat. (1977); Barclay v. State, 343 So.2d 1266 (Fla. 1977), cert. denied, 439 U.S. 892, 99 S.Ct. 249, 58 L.Ed.2d 237 (1978); Crittendon v. State, 338 So.2d 1088 (Fla. 1st DCA 1976).
Appellant also argues that venue should have been changed because of prejudicial pretrial publicity. Appellant filed a motion for change of venue prior to the commencement of the jury selection process and renewed the motion both after jury selection and at the close of the state's case. The trial judge denied the motion each time.
Appellant's motion was based on a showing that there was widespread public knowledge of the crimes throughout Wakulla County. Public knowledge alone, however, is not the focus of the inquiry on a motion for change of venue based on pretrial publicity. The critical factor is the extent of the prejudice, or lack of impartiality among potential jurors, that may accompany the knowledge. It has long escaped strict definition:
Impartiality is not a technical conception. It is a state of mind. For the ascertainment of this mental attitude of appropriate indifference, the Constitution lays down no particular tests and procedure is not chained to any ancient and artificial formula.
United States v. Wood, 299 U.S. 123, 145-46, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936). The question of jury partiality is one of mixed law and fact, requiring an appellate court to independently evaluate the voir dire testimony of impaneled jurors. Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Reynolds v. United States, 8 Otto 145, 98 U.S. 145, 25 L.Ed. 244 (1878). The test for determining whether a change of venue is required was expressed in Kelley v. State, 212 So.2d 27, 28 (Fla. 2d DCA 1968), and adopted by this Court in McCaskill v. State, 344 So.2d 1276, 1278 (Fla. 1977):
[W]hether the general state of mind of the inhabitants of a community is so infected by knowledge of the incident and accompanying prejudice, bias, and preconceived opinions that jurors could not possibly put these matters out of their minds and try the case solely upon the evidence presented in the courtroom.
In determining the extent of prejudice toward a defendant, one factor to consider is whether "it would be difficult for any individual to take an independent stand adverse to this strong community sentiment." Manning v. State, 378 So.2d 274, 276 (Fla. *1017 1979). If it is possible to empanel a jury comprising persons who can be relied upon to decide the case based upon the evidence, and not be influenced by knowledge gained from sources outside the courtroom, then a denial of change of venue is proper. See, e.g., Dobbert v. State, 328 So.2d 433 (Fla. 1976), aff'd, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 166 (1977).
In the present case, the transcript of the jury selection proceedings reveals that every member of the jury panel had read or heard something about the crime. However, they all said that they would be able to disregard the previously gained information and render a verdict based on the evidence presented in court. Although such assurances are not dispositive, they support the presumption of a juror's impartiality. It is the defendant's burden "to demonstrate `the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality.'" Murphy v. Florida, 421 U.S. 794, 800, 95 S.Ct. 2031, 2036, 44 L.Ed.2d 589 (1975) (quoting Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961)).
In Murphy v. Florida, the United States Supreme Court said that a defendant might possibly raise a presumption of partiality by showing that the general atmosphere of the community is deeply hostile to him. Two ways to establish that such hostility exists are by showing that there was inflammatory publicity and by showing great difficulty in selecting a jury. Appellant here has failed to establish such hostility by either of these methods. As was the case in Murphy, the pretrial publicity here was largely factual, rather than emotional, in nature and mainly occurred around the time of the crime and the investigation, several months before the trial. Also as in Murphy, here there was no great difficulty in selecting a jury. In Murphy the Supreme Court noted that (in contrast with Dowd where 268 of 430 veniremen were excused because they were inclined to believe the accused guilty) only "20 of the 78 persons questioned were excused because they indicated an opinion as to the petitioner's guilt." 421 U.S. at 803, 95 S.Ct. at 2037, 44 L.Ed.2d 589. Similarly, in the present case only seventeen of the seventy potential jurors questioned were excused for possible bias either because they were related to the victim or because they had formed an opinion as to the defendant's guilt. The record shows that the trial judge was properly willing to excuse clearly prejudiced jurors for cause.
Appellant argues, however, that proof of a general atmosphere of hostility against him was established by testimony that the crimes were the main topic of conversation in the rural community of Wakulla County, citing Manning v. State, 378 So.2d 274 (Fla. 1979). Although we said in Manning that the size of a community is a factor to be considered in determining the prejudicial impact of intense publicity, we did not hold that it is the only factor. Manning should not be extended to require a change of venue in every highly publicized criminal prosecution in a rural community. In this case there was not shown the degree of community hostility toward the defendant that existed in Manning. We therefore conclude that the trial judge did not abuse his discretion in denying the motion for change of venue. See Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981); Jackson v. State, 359 So.2d 1190 (Fla. 1978), cert. denied, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979).
Appellant's next argument is that the trial court erred in denying his motion to suppress the statements he gave to law enforcement officers prior to arrest. Appellant argues that the statements were coerced, were made during an unlawful detention, and were made without benefit of legal counsel. The record shows, however, that appellant willingly accompanied law enforcement officers to the Wakulla County sheriff's office to answer questions. After being advised of his constitutional rights with regard to the interview, appellant voluntarily made statements in response to the officers' questions. The record indicates that there was no impropriety *1018 in the interrogation of appellant. We therefore conclude that the court correctly denied the motion to suppress.
Appellant argues that the trial court erred in denying his motion for mistrial made when a police witness mentioned appellant's possible involvement in an unrelated robbery. The record shows that the comment in question was made by a state witness in response to a question asked on cross-examination by appellant's own attorney. The comment arose out of a series of questions reported as follows:
Q I believe somewhere in the statement on the 15th, you testified that Johnny Copeland told you that Smith was mad at him for pimping on him or getting him in trouble.
A That's correct.
Q All right, did you make any effort to verify whether or not that had occurred?
A That Mr. Copeland had told on Mr. Smith?
Q That's correct.
A Did I make any effort to do that?
Q Yes, sir.
A I don't understand what you mean, Mr. Davis.
Q Well, you just testified that you tried to verify portions of the statements or tried to run out facts and leads as they occurred to you, and when he told you that Smith was trying to set him up because he had pimped on him in the past, did you try to check that out?
A At the time that he made this particular statement, I was aware of the fact that Mr. Copeland, with Mr. Smith, had been in trouble before with basically the same type crime of robbery of another convenience store.
Record on Appeal, vol. XI, at 1718-19. The defense moved for a mistrial. The state responded that the comment had been elicited by defense counsel's own question. Defense counsel argued that the answer was not responsive to the question, but the court ruled against him and denied the motion for mistrial. The trial court's ruling was correct. The reported colloquy shows that the witness, in response to defense counsel's question, was attempting to explain why Copeland may have believed that Smith was angry towards him. Since appellant's counsel opened the door to the damaging but objectionable reference by asking the question, appellant may not now seek reversal on the basis of that error. McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981); Jackson v. State, 359 So.2d 1190 (Fla. 1978), cert. denied, 439 U.S. 1102, 99 S.Ct. 881, 59 L.Ed.2d 63 (1979).
We now consider appellant's objections to his sentences. His first argument is that he cannot be sentenced for both felony murder and the underlying felony. The indictment charged appellant with murder in the perpetration of felonious robbery and kidnapping. Either one of these two felonies, the commission of which were proven at trial, would support the conviction for first-degree murder. The felony relied upon to establish first-degree murder under the felony murder rule is a lesser included offense for purposes of section 775.021(4), Florida Statutes (1977), as construed in State v. Hegstrom, 401 So.2d 1343 (Fla. 1981). The other felony is not a lesser included offense of the murder. The sentence for one of the felonies must be vacated under Hegstrom, but the other may stand. Since the kidnapping was more closely connected to the murder in time, we conclude that the kidnapping was the underlying felony upon which the felony murder conviction was based. Therefore we vacate the separate sentence for the crime of kidnapping.
Appellant also raises several challenges to his sentence of death. He argues that the trial court erred in its application of the aggravating and mitigating circumstances. The judge found that appellant had previously been convicted of felonies involving violence; that the murder was committed in connection with kidnapping and rape; that the murder was committed for the purpose of avoiding prosecution for robbery, *1019 kidnapping, and rape; that the murder was committed for pecuniary gain; and that the murder was especially heinous, atrocious, and cruel. The judge found that only one factor constituted a mitigating circumstance, appellant's age. The judge indicated that this factor was not entitled to much weight in light of the fact that appellant was mature enough to have served a term in state prison.
The circumstance of appellant having previously been convicted of felonies involving violence was supported by evidence of his previous convictions for armed robbery and was therefore properly considered. Cooper v. State, 336 So.2d 1133 (Fla. 1976), cert. denied, 431 U.S. 925, 97 S.Ct. 2200, 53 L.Ed.2d 239 (1977). The other four aggravating circumstances are also supported by evidence. However, these four factors are characteristics of the capital felony itself, rather than of the defendant, and therefore require further justification in view of the fact that appellant's liability rests upon the felony murder rule and not on evidence that he participated in premeditated murder.
The court found that the capital felony was committed in the course of committing the crimes of kidnapping and rape. Since the evidence shows that appellant was a principal in and fully participated in these crimes, this factor may be relied upon as an aggravating circumstance even though appellant's conviction for the capital felony itself is based on the felony murder theory. The court found that the murder was committed to avoid prosecution for the crimes already committed, robbery, kidnapping, and rape. Stevens v. State, 419 So.2d 1058 (Fla. 1982), cert. denied, 459 U.S. 1228, 103 S.Ct. 1236, 75 L.Ed.2d 469 (1983). We hold that this aggravating circumstance also may be imputed to appellant even though his liability for the murder itself is vicarious. The trial court held that the murder was committed for pecuniary gain. The evidence shows that the murder was the culmination of a course of events that began when appellant went into a store, robbed the clerk at gunpoint, and abducted her from the store. Stevens v. State. Therefore we hold that this pecuniary-gain feature of the murder may be imputed to appellant even though his criminal liability for the murder itself rests on the felony murder theory. Finally, the trial court found that the capital felony was especially heinous, atrocious, or cruel. The validity of this aggravating factor rests not on the actual method of killing  the victim was shot three times in the head with a pistol  but rather on the additional acts setting this crime apart from the norm of capital felonies. See State v. Dixon, 283 So.2d 1 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. 1950, 40 L.Ed.2d 295 (1974). Proof of such additional acts are provided by the evidence of the victim's hours-long ordeal from the time she initially encountered appellant to the time of her eventual execution. E.g., Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Knight v. State, 338 So.2d 201 (Fla. 1976). The evidence showed that appellant was an equal participant in the perpetration of these additional acts. Therefore this aggravating circumstance too may be applied to appellant even though his conviction for the capital felony itself is based on the felony murder rule.
Appellant argues that the capital felony sentencing law is unconstitutional because it allows a sentence of death without proof of intent to kill. In Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), the United States Supreme Court held in a felony murder case that a sentence of death may not constitutionally be imposed in the absence of proof that the defendant killed, attempted to kill, intended to kill, contemplated that life would be taken, or anticipated that lethal force would or might be used. Id. 102 S.Ct. at 3372, 3379. Although the evidence did not show that appellant shot the victim, his participation in the events leading up to the murder was substantial enough to support the conclusion that he contemplated that life would be taken or anticipated that lethal force would be used.
The trial judge found that the aggravating circumstances outweighed the single *1020 marginal mitigating consideration. The jury recommended a sentence of death. The aggravating circumstances found by the trial judge were all proper. With the case in this posture we conclude that the sentence of death is appropriate.
We affirm the convictions of first-degree murder, robbery, kidnapping, and sexual battery. The separate sentence for the crime of kidnapping is vacated. The sentence of death is affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN and EHRLICH, JJ., concur.
OVERTON, J., dissents with an opinion, in which McDONALD, J., concurs.
OVERTON, Justice, dissenting:
I must reluctantly dissent on the grounds that appellant was constitutionally entitled to a change of venue. This is clearly the type of hideous crime which not only justifies the imposition of the death penalty, but also understandably arouses strong emotions against an individual charged with committing the offense. Although the result reached by the majority would be appropriate if the trial had been conducted in another county, I find there must be a retrial because appellant was constitutionally entitled to a change of venue under the law established both by the United States Supreme Court, Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961), and by this Court in Manning v. State, 378 So.2d 274 (Fla. 1979). There is no logical way to reconcile the majority opinion in this case and Manning.
Deciding a motion for a change of venue is often the most difficult decision a trial judge must make in a well-publicized case. As the majority recognized, public knowledge of the crime alone is not the problem; the critical factor is the extent of the prejudice, bias, and hostility that may accompany that knowledge. The majority also discussed the test for a change of venue found in McCaskill v. State, 344 So.2d 1276 (Fla. 1977), and noted that, under Manning, one factor the trial court should consider in determining the extent of the prejudice toward a defendant is whether "it would be difficult for any individual to take an independent stand adverse to this strong community sentiment." 378 So.2d at 276. It is not determinative that all jurors disavowed any bias or prejudice or that appellant did not use all his peremptory challenges. What is required is that the court determine whether the community's knowledge of the case and the bias against the defendant is such that it would be difficult, if not impossible, for a jury drawn from the community to disregard prior knowledge of the case and base its verdict exclusively on the evidence presented during trial. Every criminal defendant has the right to be tried by an impartial jury. This Court stated in Manning:
Every reasonable precaution should be taken to preserve to a defendant trial by such a jury and to this end if there is reasonable basis shown for a change of venue a motion therefor properly made should be granted.
A change of venue may sometimes inconvenience the State, yet we can see no way in which it can cause any real damage to it. On the other hand, granting a change of venue in a questionable case is certain to eliminate a possible error and eliminate a costly retrial if it be determined that the venue should have been changed.
378 So.2d at 277 (quoting from Singer v. State, 109 So.2d 7, 14 (Fla. 1959)).
In my opinion, the appellant demonstrated a constitutional basis for a change of venue. The facts in this case are almost identical to the facts in Manning, where we found such a high degree of knowledge and hostility in a rural community that the failure to change venue was reversible error. The voir dire in the instant case showed that every jury panel member had prior knowledge of the crimes through the media or community discussion. As in Manning, the crimes in this case occurred in a community where the incident received substantially more attention and concern than if the same incident had occurred in a metropolitan area. Counsel for appellant presented unrefuted evidence of hostility in the community towards the appellant and *1021 his codefendants. The victim in this case was related to many residents of Wakulla County, and one prospective juror said that "it was impossible to stop and have coffee in this county for three or four weeks without hearing of it." There was considerable pre-trial publicity, including the anticipated testimony of key witnesses and the disclosure of incriminating statements made by appellant and his codefendants. I also note that Copeland's codefendant, Frank Smith, was granted a change of venue, tried in Jefferson County, and, after a mistrial, retried in Franklin County.
I cannot distinguish this case from Manning and find that the record clearly reflects sufficient hostility towards appellant and his codefendants to warrant a change of venue. The majority decision is inconsistent with Manning and creates disharmony in the law of this state. A lawyer or judge reading Manning and the majority opinion in this case would find it impossible to reconcile the two decisions and to determine what circumstances require a change of venue.
For the reasons expressed, I dissent and would remand for a new trial in a county other than Wakulla County.
McDONALD, J., concurs.