462 So.2d 1075 (1985)
John MILLS, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 63092.
Supreme Court of Florida.
January 10, 1985.
Rehearing Denied February 28, 1985.
*1077 Roosevelt Randolph of Knowles & Randolph, Tallahassee, for appellant.
Jim Smith, Atty. Gen., and David P. Gauldin, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
John Mills, Jr., appeals from his conviction of and sentences for first-degree murder, kidnapping, armed burglary of a dwelling, first-degree arson, and grand theft. The trial court sentenced Mills to death for murder and to consecutive sentences of ninety-nine years for kidnapping, ninety-nine years for burglary, thirty years for arson, and five years for grand theft, with retention of jurisdiction over one-half of the kidnapping, burglary, and arson sentences. We have jurisdiction under article V, section 3(b)(1) of the Florida Constitution and affirm Mills' convictions and sentences.
The charges against Mills and co-defendant Michael Fredrick arose out of the disappearance of Les Lawhon and the burning of the Lawhon trailer in Wakulla County. A search for Lawhon proved futile. Subsequently, the police confronted Fredrick with a copy of his sales receipt from a precious metals dealer for a ring stolen from the Lawhon trailer. Fredrick eventually admitted his part in the criminal episode, implicated Mills, and led police to the skeletal remains of Les Lawhon in a deserted area of Wakulla County. A grand jury indicted Fredrick and Mills for the crimes set out above, plus a later severed charge for possession of a firearm by a convicted felon.
Fredrick pleaded guilty to second-degree murder and became the main witness against Mills at trial. Fredrick testified that he and Mills came upon the Lawhon trailer while driving in Mills' truck looking for a place to burglarize. Mills gained entry to the trailer by asking Les Lawhon if he could use the telephone. Once Mills *1078 and Fredrick were inside Mills held a knife to Lawhon's throat, took a shotgun from the trailer, and forced Lawhon outside and into Mills' truck. Fredrick drove while Mills kept the shotgun aimed at Lawhon. Mills made several comments to Lawhon clearly implying that he would be killed when they reached their destination. They stopped in a deserted area where Mills tied Lawhon's hands behind his back and hit him on the back of the head with a tire iron. As Fredrick and Mills were about to leave, Lawhon jumped up and ran away. Mills chased after Lawhon and killed him with a shotgun blast at close range. Fredrick and Mills then returned to the Lawhon trailer and removed most of the valuable personal property.
Mills testified in his own defense that Fredrick owed him money and had borrowed his truck on the day of the murder. Fredrick returned the truck full of property to repay the debt to Mills. Mills denied any involvement in the crimes. The defense suggested that Fredrick and another person had killed Lawhon.
The jury found Mills guilty as charged on all counts and recommended the death penalty. The trial court sentenced Mills to death after finding insufficient mitigating circumstances to outweigh the aggravating circumstances. The trial court also sentenced Mills for the other crimes as set out above.
Mills contends first that the trial court erred in denying his motion for change of venue because of extensive pretrial publicity and community prejudice against him. The trial court's decision on a motion for change of venue will generally be upheld, absent the showing of a palpable abuse of discretion. Straight v. State, 397 So.2d 903 (Fla.), cert. denied, 454 U.S. 1022, 102 S.Ct. 556, 70 L.Ed.2d 418 (1981). Mills argues that the trial court clearly abused its discretion under the circumstances of this case. He relies upon Manning v. State, 378 So.2d 274 (Fla. 1979), where we ordered a new trial in a different county based upon the intensive pretrial publicity and strong community sentiment against Manning. As we stated in Manning:
A trial judge is bound to grant a motion for a change of venue when the evidence presented reflects that the community is so pervasively exposed to the circumstances of the incident that prejudice, bias, and preconceived opinions are the natural result.
Id. at 276.
In the case at bar, as in Manning, a black defendant stood accused of killing a white victim in a rural county, with the killing possibly receiving more publicity than if it had occurred in an urban area. The similarities, however, end there. The accused and the victim here were both from Wakulla County, while Manning was an outsider charged with killing two well-liked local sheriff's deputies. All of Manning's prospective jurors had ex parte knowledge of evidence against him and would have been hard-pressed to stand against the strong community hostility toward him. On the other hand, the trial judge in this case heard conflicting evidence on whether Mills could receive a fair trial in Wakulla County. He denied the change of venue motion after a pretrial hearing, with reconsideration possible at the voir dire of potential jurors. A few potential jurors had extensive knowledge or expressed bias or preconceived opinions, but the trial judge conducted individual voir dire with three potential jurors at a time, striking for cause any juror who expressed partiality or who had detailed knowledge of the case. The court also allowed extra peremptory challenges.
Our review of the voir dire convinces us that the jury as selected was not biased or prejudiced against Mills. Straight; Manning. In fact most of the challenges for cause were based upon death penalty grounds rather than bias, prejudice, or preconceived opinions. The procedures used by the trial court effectively produced an impartial jury that gave Mills a fair trial. None of the incidents of bad feeling that Mills argues took place during the trial were of such magnitude as to render the *1079 impartiality of the jury suspect. Adoption of Mills' broad interpretation of Manning would require almost every first-degree murder occurring in a rural county to be tried in another county. We decline to so restrict the discretion of the trial court over change of venue motions. We find no abuse of discretion in the trial court's refusal to grant a change of venue in the circumstances of the present case.
On this same issue we find no error in the refusal to tax costs for a public opinion survey of the community feeling about this case in Wakulla County. The trial court was concerned with his inability to control the taking of the survey and the possibility that the survey itself would contaminate the potential jurors. These were valid grounds to deny the petition. In addition this Court has held such surveys inadmissible in change of venue proceedings on the grounds of hearsay and unreliability. Irvin v. State, 66 So.2d 288 (Fla. 1953), cert. denied, 346 U.S. 927, 74 S.Ct. 316, 98 L.Ed. 419 (1954).
In his second point Mills contends that the trial court erred in failing to excuse a potential juror for cause. Mills claims prejudice because he had to use his last peremptory challenge to remove this person from the jury and later expressed his dissatisfaction with the jury selected. The competency of a juror challenged for cause presents a mixed question of law and fact to be determined by the trial court. Manifest error must be shown to overturn the trial court's finding. Christopher v. State, 407 So.2d 198 (Fla. 1981), cert. denied, 456 U.S. 910, 102 S.Ct. 1761, 72 L.Ed.2d 169 (1982). The trial court determined that the challenged juror here could "lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984).
We agree with the trial court's determination of competency. During individual voir dire, this prospective juror stated that he could be impartial and denied expressing an opinion about Mills' guilt during a conversation with Mills' brother-in-law. Mills' counsel then represented to the trial court his independent information that this man had said Mills was guilty. The trial court subsequently allowed Mills' counsel an opportunity to present further evidence of the alleged statement, but counsel could only repeat his representations that the incident did occur. The trial court had to weigh the prospective juror's denial, under oath, that he made the statement against representations that someone, who apparently refused to come forward and give testimony, heard him make the statement. The trial court did not abuse its discretion in refusing to strike this person for cause in view of the lack of support presented for the charges of partiality. The prospective juror's distant relationship to the victim's family and his acquaintance with Mills and his family did not negate his declarations of impartiality. Accordingly, we find no merit in this issue.
Mills claims in his third point that the trial court erred in denying his motion for a mistrial based upon the prosecutor's cross-examination concerning his prior convictions. See § 90.610(1), Fla. Stat. (1981). We find no error in allowing the prosecutor to ask the specific impeachment questions, which are similar to the questions Mills asked Fredrick on cross-examination.
Mills next argues that the trial court erred in allowing the victim's father to identify certain property that belonged to the victim. His reliance upon Welty v. State, 402 So.2d 1159 (Fla. 1981), is misplaced. Welty addressed the propriety of allowing a relative to identify the victim. The concern expressed in Welty as to assuring the defendant a dispassionate trial has less force in this case because property identification by a relative has far less potential for creating sympathy or prejudice in the minds of the jurors. The fact that Mills stipulated to the ownership and value of the property does not render the testimony of the victim's father irrelevant. The *1080 victim's father was the only person who could identify specific items of property that belonged to the victim. His testimony corroborated the testimony of co-defendant Fredrick relating to that property. The record does not indicate that this testimony had the underlying purpose of gaining the sympathy of the jury or of prejudicing it against Mills. We find no error in allowing the victim's father to identify the stolen property.
In his last challenge to the guilt phase of the trial Mills contends that the trial court erred in admitting a photograph of the skeletal remains of the victim. Mills acknowledges that even gruesome or inflammatory photographs may be admitted if they are relevant. See Adams v. State, 412 So.2d 850 (Fla.), cert. denied, 459 U.S. 882, 103 S.Ct. 182, 74 L.Ed.2d 148 (1982); Straight v. State. He argues that the photograph was objectionable because it was irrelevant to any disputed issue in this case, was merely cumulative, and served to prejudice the jury. We disagree. The photograph in question was taken at the scene shortly after discovery of the victim's body and helped establish how long the victim had been dead. The photograph also helped explain the lack of medical evidence that the victim had received a blow to the skull by Mills, as Fredrick had testified. We find the photograph relevant and that its admission did not constitute error.
Mills does not challenge the sufficiency of the evidence supporting his convictions. We have examined the record, however, and find sufficient evidence to support the convictions on all counts.
Mills also complains that the trial court erred in retaining jurisdiction over one-half of his kidnapping, burglary, and arson sentences. He relies on Williams v. State, 414 So.2d 509 (Fla. 1982), in arguing that chapter 82-171, section 9, Laws of Florida, which increased the maximum retention period from one-third to one-half of the sentence for certain crimes, constitutes an illegal ex post facto law as applied because the crimes here occurred before the effective date of chapter 82-171. Mills, however, unlike Williams, stood subject to the existing retention of jurisdiction statute at the time the crimes were committed. § 947.16(3), Fla. Stat. (1981). Therefore, the legal consequences of retained jurisdiction had already attached under the existing statute. The quantum of punishment has not increased. The increase in the period of retention alone does not constitute an ex post facto law in this case because Mills was convicted and sentenced after the effective date of the statute increasing the retention period.[*] We disapprove any conflicting holding in Reid v. State, 440 So.2d 651 (Fla. 2d DCA 1983).
The trial court found five aggravating circumstances applicable  committed by person under sentence of imprisonment, during a kidnapping, for pecuniary gain, in a cold, calculated, and premeditated manner, and heinous, atrocious, or cruel. Mills now challenges his death sentence on three grounds. He argues that the trial court erred in finding the aggravating circumstances that the capital felony was heinous, atrocious, or cruel and was committed in a cold, calculated, and premeditated manner. § 921.141(5)(h), (i), Fla. Stat. (1981). He also argues that the trial court improperly doubled those two aggravating circumstances. He argues finally that the trial court erred in not finding several applicable mitigating circumstances. We find no error in any of these points.
The evidence supports the trial court's finding that the capital felony was especially heinous, atrocious, or cruel. The victim here must have suffered great mental anguish as he considered Mills' comments and actions during the abduction, which the victim could only have interpreted to mean that he would be killed once they reached their destination. He begged for his life to no avail. He later attempted *1081 to escape his captors even after being bound and then struck on the head with a tire iron. The fact that the victim died almost immediately after an "execution" style shotgun blast to the face does not negate the mental anguish he suffered beforehand. Francois v. State, 407 So.2d 885 (Fla. 1981), cert. denied, 458 U.S. 1122, 102 S.Ct. 3511, 73 L.Ed.2d 1384 (1982).
We also find the evidence established the aggravating circumstance that the capital felony "was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification." § 921.141(5)(i). Not content to permit the bound and injured victim to escape into the woods, Mills took a shotgun and stalked the victim through the underbrush until he found and executed him. Mills' actions demonstrate the kind of heightened premeditation necessary to qualify for the aggravating circumstance of committed in a cold, calculated, and premeditated manner. Card v. State, 453 So.2d 17 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 396, 83 L.Ed.2d 330 (1984); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982).
We also find no improper doubling of aggravating circumstances. Mills argues that the trial court relied upon the same facts to find the capital felony both heinous, atrocious, or cruel and cold, calculated, and premeditated. The trial court may consider both these aggravating circumstances together as long as the findings in support of the death sentence contain sufficient, distinct proof of each aggravating factor. Squires v. State, 450 So.2d 208 (Fla.), cert. denied, ___ U.S. ___, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); Hill v. State, 422 So.2d 816 (Fla. 1982), cert. denied, 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983). The findings of fact set out the proof necessary to establish the victim's mental anguish for the aggravating circumstance of heinous, atrocious, or cruel, while also containing sufficient, distinct facts to demonstrate that Mills committed the murder in a cold, calculated, and premeditated manner. The trial court did not err in finding both aggravating circumstances.
In the penalty phase Mills presented evidence of his low intelligence and his potential for rehabilitation. The trial court, however, found nothing in mitigation. Mills now contends that the trial court erred in not finding the following mitigating circumstances: his lack of a significant prior criminal history, subsection 921.141(6)(a); his age at the time of the crime, subsection 921.141(6)(g); and the nonstatutory mitigating circumstances of his low intelligence and his potential for rehabilitation. The trial court must determine whether a mitigating circumstance has been proven and how much weight it should carry in the sentencing decision. Smith v. State, 407 So.2d 894 (Fla. 1981), cert. denied, 456 U.S. 984, 102 S.Ct. 2260, 72 L.Ed.2d 864 (1982). We agree with the trial court's refusal to find the mitigating circumstances asserted by Mills.
Mills admits his four prior convictions for burglary, but argues that because he was convicted of all four burglaries at the same time the trial court should have considered them as one conviction and should have found no significant criminal history as a mitigating circumstance. This Court has held that the commission of several burglaries, even without convictions for those crimes, will justify the rejection of the lack of a significant history of prior criminal activity as a mitigating circumstance. Washington v. State, 362 So.2d 658 (Fla. 1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2063, 60 L.Ed.2d 666 (1979). The trial court did not err in refusing to find that Mills had no significant criminal history. Likewise, Mills' age of twenty-six at the time of the crime was not a mitigating circumstance. Id.
Finally, the trial court did not err in failing to find any nonstatutory mitigating circumstances in the testimony of Dr. Akbar concerning Mills' low intelligence and his potential for rehabilitation. The trial court need not consider low intelligence *1082 alone as a mitigating circumstance. Ruffin v. State, 397 So.2d 277 (Fla.), cert. denied, 454 U.S. 882, 102 S.Ct. 368, 70 L.Ed.2d 194 (1981). The trial court was also justified in rejecting the testimony on Mills' potential for rehabilitation, because Mills had been on parole only a few months before he committed the murder and other crimes in this case. The trial court did not err in finding that the aggravating circumstances far outweighed any possible mitigating circumstances.
Mills has failed to demonstrate reversible error in his convictions or sentences. Accordingly, we affirm the convictions and sentences imposed on Mills.
It is so ordered.
BOYD, C.J., and ADKINS. OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
NOTES
[*] The legislature later reduced the maximum retained jurisdiction period to one-third of the sentence for certain crimes, but provided that ch. 82-171 would still apply to persons convicted during its effective period. § 947.16(3), (5), Fla. Stat. (1983).