538 So.2d 486 (1989)
Alan PRICE, Appellant,
v.
The STATE of Florida, Appellee.
No. 84-1568.
District Court of Appeal of Florida, Third District.
January 31, 1989.
Rehearing Denied March 7, 1989.
*487 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Joni B. Braunstein and Michael Niemand, Asst. Attys. Gen., for appellee.
Before SCHWARTZ, C.J., and NESBITT and PEARSON, DANIEL S., JJ.
*488 NESBITT, Judge.
Alan Price appeals his conviction for first-degree murder with a firearm, armed burglary of a structure with a dangerous weapon, kidnapping with a firearm, robbery with a firearm, and grand theft, second-degree, all in connection with the December 24, 1983 robbery of a County Seat Store. We reverse appellant's convictions and remand for a new trial on the following analysis.
Price alleges that he was forced to use a peremptory challenge to exclude a juror when the trial court denied his motion to exclude her for cause. As a result, an objectionable juror was seated after defendant used all of his remaining peremptory challenges and the trial court refused to allow defendant one extra challenge.
During voir dire, prospective juror Grink volunteered the information that victim Robert Zore, the police officer murdered in a chase immediately subsequent to the robbery, was a friend and relative of Grink's husband and that the victim and his wife had even been guests in the Grinks' home. Grink reiterated several times her concern about her acquaintance with the victim and the victim's relationship with her husband and about the fact that she would have to explain her decision to her husband. The voir dire transcript reveals the following colloquy:
[DEFENSE COUNSEL]: Well, now did you hear a few minutes ago when I indicated that Alan Price as any defendant charged in any case, has absolutely nothing to prove and has a right not to take the witness stand?
GRINK: Yes, I did.
[DEFENSE COUNSEL]: So suppose you heard all the evidence and you never heard "his side" so to speak, he never took the witness stand and even notwithstanding that you are not convinced of his guilt beyond and to the exclusion of every reasonable doubt based on what you heard the evidence; don't you think you would have to explain that to your husband. Say well, now, you know, he is a good friend of Officer Zore's and 
GRINK: I don't know because I haven't discussed the case. I didn't want to say anything to him at all. I haven't discussed nothing.
[DEFENSE COUNSEL]: Well, do you have some concerns about it?
GRINK: Just a little.
[DEFENSE COUNSEL]: Do you think that the concern that you have would come into your mind perhaps during deliberations on the case?
GRINK: I don't think so.
[DEFENSE COUNSEL]: In other words, you feel that during deliberations as to guilt or innocence of Alan Price that you would basically be able to deliberate the same as you would if you have never seen or never knew about and your husband never knew that was the victim of the homicide?
GRINK: I may deep down have a little bit of thought about it.
[DEFENSE COUNSEL]: It would make some difference, though, wouldn't it?
GRINK: Just a little. I think it would be there. (emphasis supplied)
Although our reading of this exchange provides no question but that Grink was worried and fearful that her personal relationship with the victim would prohibit her from acting as an impartial juror, the trial judge attempted to rehabilitate her. He engaged in the following exchange with Grink:
THE COURT: I would like to ask a couple of questions. Mrs. Grink, in light of your recalling that Mr. Zore had been to your home, several questions, do you feel that you can still be fair in this case?
GRINK: I think so.
THE COURT: Do you feel that would have any prejudice whatsoever in this case as far as the outcome?
GRINK: I don't think so.
THE COURT: Do you feel comfortable if you were selected to sit on this jury, you could be fair to both sides, I understand the fact that nobody likes to sit on a case like this. As I indicated, that includes me as well as you but do you think that you can be comfortable with it *489 and sit on this case and base your verdict on the law and the evidence?
GRINK: I could do it.
This potential juror's responses to the trial judge were again feeble, conditional, and positively not reflective of a final, neutral, and detached determination to sit as a fair and impartial juror. Defendant Price then moved to excuse Grink for cause. The trial court rejected the motion. Price contends that the trial court should have excused Grink for cause because of the uncertainty surrounding her impartiality. We agree.
A juror is not impartial when one side must overcome a preconceived opinion in order to prevail. When any reasonable doubt exists as to whether a juror possesses the state of mind necessary to render an impartial recommendation as to punishment, the juror must be excused for cause. Moore v. State, 525 So.2d 870, 872 (Fla. 1988); Hill v. State, 477 So.2d 553, 556 (Fla. 1985), cert. denied, ___ U.S. ___, 108 S.Ct. 1302, 99 L.Ed.2d 512 (1988); see Singer v. State, 109 So.2d 7, 22 (Fla. 1959); Jefferson v. State, 489 So.2d 211, 212 (Fla. 3d DCA), review denied, 494 So.2d 1153 (Fla. 1986); Leon v. State, 396 So.2d 203 (Fla. 3d DCA), review denied, 407 So.2d 1106 (Fla. 1981); see also Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); Fla.R.Civ.P. 1.431(c)(1); cf. Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985) ("Close cases involving challenge to impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to his or her impartiality.").
A juror's assurance that he or she is able to remove any opinion, bias, or prejudice from his or her mind, and decide the case based solely on the evidence adduced at trial, is not determinative of whether that juror should have been excused for cause. Club West, Inc. v. Tropigas of Florida, 514 So.2d 426 (Fla. 3d DCA 1987), review denied, 523 So.2d 579 (Fla. 1988).
We have no doubt but that a juror who is being asked leading questions is more likely to "please" the judge and give the rather obvious answers indicated by the leading questions, and as such these responses alone must never be determinative of a juror's capacity to impartially decide the cause to be presented. Grappling with similar circumstances, the court in Johnson v. Reynolds, 97 Fla. 591, 121 So. 793, 796 (1929), observed:
It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias of prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former?
We have acknowledged that it is error for a court to force a party to exhaust his peremptory challenges on persons who should be excused for cause since it has the effect of abridging the right to exercise peremptory challenges. Smith v. State, 516 So.2d 43 (Fla. 3d DCA 1987); see Leon v. State, 396 So.2d at 205, citing Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). See also Jefferson, 489 So.2d at 212; Anderson v. State, 463 So.2d 276 (Fla. 3d DCA 1984), review denied, 475 So.2d 693 (Fla. 1985), cert. denied, ___ U.S. ___, 108 S.Ct. 2870, 101 L.Ed.2d 905 (1988). As noted above, defendant had to use a peremptory challenge to exclude Grink. He was then forced to accede to an objectionable juror because he had by then exhausted his remaining peremptory challenges. Because such error is reversible, defendant's convictions must be reversed and the cause remanded for a new trial.
To facilitate the new trial, we briefly address appellant's additional claims of error. Appellant contends that the testimony of the two officers who spoke to victim Zore immediately after he was shot failed to establish that Zore's statements were made under a sense of impending death, as required to establish the dying declaration exception to the hearsay rule. *490 § 90.804(2)(b), Fla. Stat. (1987).[1]See Torres-Arboledo v. State, 524 So.2d 403 (Fla.), cert. denied, ___ U.S. ___, 109 S.Ct. 250, 102 L.Ed.2d 239 (1988); McRane v. State, 142 Fla. 240, 194 So. 632, 636 (1940); Lester v. State, 37 Fla. 382, 20 So. 232, 233 (1896); see also Shepard v. United States, 290 U.S. 96, 100, 54 S.Ct. 22, 24, 78 L.Ed. 196 (1933).
In the instant case, Officer Zore was shot in three places, including the fatal shot to the heart, and was bleeding profusely at the time he described his assailant to officers arriving at the scene. Zore was described as staggering, his face reflecting terror, and his coloring extremely white, his eyes open very wide, and with what one officer described as a death look on his face. In gasping breaths, he described his assailant. We agree with the trial court that Zore's comments to the two officers on the scene were dying declarations. While Zore did not verbally express his belief that his death was imminent, minutes after Zore gave the description of his assailant, Zore asked if he was going to die. The fact that at one point Zore asked to be taken to a hospital should not preclude his statements from being viewed as dying declarations in light of the totality of the circumstances. See Teffeteller v. State, 439 So.2d 840 (Fla. 1983) (express utterances of knowledge of imminent death are not necessary to applicability of hearsay exception which is based on totality of circumstances), cert. denied, 465 U.S. 1074, 104 S.Ct. 1430, 79 L.Ed.2d 754 (1984).
Next, Price contends that the trial court erred in admitting evidence of uncharged criminal acts. Before the perpetrator left the Dadeland store, he boasted to the bound employees that he had twice before robbed the County Seat store in the Cutler Ridge Mall. Therefore, if the state could prove that it was the defendant who committed the Cutler Ridge robberies, then that proof would be relevant to identify the defendant as the perpetrator of the Dadeland robbery and the subsequent murder. Because evidence of the defendant's braggadocio, if believed, was sufficient to show that the Dadeland and Cutler Ridge robbers were the same person, the identity of the Dadeland robber could be shown merely by proving the identity of the Cutler Ridge robbers and evidence to that end was relevant and admissible.[2]See Parker v. State, 456 So.2d 436 (Fla. 1984) (no error found in allowing into evidence defendant's admission that he shot a man in Washington, D.C. because evidence was relevant to prove identity of defendant as perpetrator of charged murder where bullet in D.C. shooting was linked by ballistics to bullet which killed victim in Miami); Ratushinak v. State, 517 So.2d 749 (Fla. 4th DCA 1987) (where assailant stated to victim that "he was on the run" and that he "had escaped from jail" and defendant arrested later that night admitted to police "that he had just *491 gotten out of the Broward County jail the night before," testimony that the defendant had been released from jail the previous evening was admitted as relevant to show defendant was perpetrator of the crime the morning following his release, notwithstanding that the testimony also revealed that the defendant had been in custody for an unrelated crime), review denied, 525 So.2d 880 (Fla. 1988); see also Henderson v. State, 304 So.2d 537 (Fla. 3d DCA 1974) (where perpetrator's fingerprint was found at crime scene, exemplar of defendant's fingerprints taken at booking on a separate crime admissible to prove identity of defendant as the perpetrator of charged crime).
Finally, we note that under the standard established in Faison v. State, 426 So.2d 963 (Fla. 1983), the trial court's denial of defendant's motion for dismissal of the kidnapping charge was proper. We need not discuss the propriety of the imposed sentence which, under our holding, will be vacated.
Accordingly, we reverse the defendant's conviction and remand for a new trial.
REVERSED AND REMANDED.
NOTES
[1] Section 90.804(2)(b), Florida Statutes (1987) establishes the following exception to the general rule excluding hearsay:

Statement under belief of impending death. In a civil or criminal trial, a statement made by a declarant while reasonably believing that his death was imminent, concerning the physical cause or instrumentalities of what he believed to be his impending death or the circumstances surrounding his impending death.
[2] In addition to the pure relevancy argument advanced above, we agree with the trial court's admission of this evidence under the "Williams Rule" as clearly relevant to establishing modus operandi. Section 90.404(2)(a), Florida Statutes (1987) provides that:

[S]imilar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.
See Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959). Based on the testimony submitted, it is clear that persuasive and unusual similarities in the robberies, coupled with the appellant's unique personal knowledge of the physical layouts of the stores, the locations of the safes, and the management procedures utilized at County Seat Stores, specifically regarding closing and cash counting, rendered the challenged evidence admissible even under the strict standards required for "Williams Rule" evidence. See Kight v. State, 512 So.2d 922 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1100, 99 L.Ed.2d 262 (1988); Rogers v. State, 511 So.2d 526 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 733, 98 L.Ed.2d 681 (1988).