677 So.2d 926 (1996)
William COGGINS, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-130.
District Court of Appeal of Florida, Third District.
July 17, 1996.
Bennett H. Brummer, Public Defender and May L. Cain, Special Assistant Public Defender, for appellant.
Robert A. Butterworth, Attorney General and Cynthia A. Greenfield, Assistant Attorney General, for appellee.
Before JORGENSON, COPE and GREEN, JJ.
PER CURIAM.
On this appeal, William Coggins challenges his conviction for second degree murder after a jury trial on various grounds. We agree with Coggins that the trial court reversibly erred when it denied his challenge for cause of a prospective juror (whom he later peremptorily challenged) and thereafter refused his request for an additional peremptory challenge to strike other objectionable members of the panel.[1] During voir dire, we find that prospective juror James Conley's ability to sit as a fair and impartial juror in this case *927 was called into question by his responses to questions from both the Court and prosecutor; therefore, he should have been stricken for cause.[2]
Although the trial court's predilection on the first day of voir dire was to excuse Mr. Conley for cause, the trial court ultimately denied the challenge for cause on the second day based upon the court's perception that Mr. Conley no longer exhibited hostility.[3] We do not agree with the court below that Conley's responses to voir dire questioning by defense counsel on the second day eliminated any reasonable doubt as to his competency to serve as a fair and impartial juror in this case.
The test for juror competency, as enunciated by our Florida Supreme Court, is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." Turner v. State, 645 So.2d 444, 447 (Fla.1994)(quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.), cert. denied, 469 U.S. 873, 105 S.Ct. 229, 83 L.Ed.2d 158 (1984)). "The juror should be excused if there is any reasonable doubt about the juror's ability to render an impartial verdict." Id; see also King v. State, 622 So.2d 134 (Fla. 3d DCA 1993)(holding that a prospective juror should have been excused for cause after he asserted that he was the victim of a crime by an unknown assailant who resembled the defendant and the juror was uncertain whether he could put aside this experience in this case); *928 Price v. State, 538 So.2d 486, 488-89 (Fla. 3d DCA 1989)(holding that a prospective juror who expressed concern that her acquaintance with the victim might interfere with her impartiality as a juror should have been excused for cause).
We find that a reasonable doubt as to juror Conley's ability to sit as a fair and impartial juror in this case was certainly created with his candid acknowledgement that his family's prior criminal victimization would affect his thought processes as a juror in this case. Moreover, we find that none of Conley's subsequent responses to questions during the remainder of his voir dire served to dispel such doubt. Indeed, even if juror Conley had expressly retracted some of his earlier responses, the trial court would have had to properly view his statements with skepticism:
It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former?
Price, 538 So.2d at 489 (quoting Johnson v. Reynolds, 97 Fla. 591, 121 So. 793, 796 (1929)). Because the trial court forced Coggins to utilize a peremptory challenge to excuse juror Conley when Conley should have been stricken for cause and the court refused Coggins' request for an additional peremptory challenge to strike an objectionable juror who eventually sat on the jury, we reverse and remand for a new trial. King, 622 So.2d at 135; Price, 538 So.2d at 489.
We have carefully considered the remaining issues on appeal and conclude that they lack merit.
Reversed and remanded for a new trial.
JORGENSON and GREEN, JJ., concur.
COPE, Judge, specially concurring.
Although mindful of our deferential standard of review in jury selection matters, I concur that a new trial must be ordered. However, my reasoning differs from that set forth in the majority opinion.
The Florida Supreme Court has said:
There is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause. Appellate courts consistently recognize that the trial judge who is present during voir dire is in a far superior position to properly evaluate the responses to the questions propounded to the jurors. In fact, it has been said:
There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury.
Cook v. State, 542 So.2d 964, 969 (Fla.1989) (citations omitted). "The competency of a juror challenged for cause presents a mixed question of law and fact to be determined by the trial court. Manifest error must be shown to overturn the trial court's finding." Mills v. State, 462 So.2d 1075, 1079 (Fla. 1985). Deference is owed to the trial court not only because the trial court was able to observe the demeanor of the jurors, but also because the trial court must rule on the spot, cannot await the preparation of a transcript, and must proceed on the basis of its recollection and notes of what all of the prospective jurors have said.
Given our standard of review, I cannot agree that there was any abuse of discretion in denying the challenge for cause directed at juror Conley. It is true that at the close of the first day of jury selection, the trial court thought that the prospective juror's demeanor reflected an unwillingness to serve on the jury. However, at the conclusion of the first day of jury selection, several jurors were excused for cause based on answers they had already given. When defense counsel was asked if juror Conley should be excused for cause, counsel said, "I like him, I want him back tomorrow." Consequently, the juror was kept within the venire and returned for the second day of voir dire.
*929 At the conclusion of the second day of voir dire, defense counsel challenged juror Conley for cause, and the trial court denied the challenge. The trial court stated in substance that the second day's voir dire had alleviated its concern about the juror's demeanor. The court concluded that there was not a basis for a challenge for cause.
It is unreasonable and unfair to the trial judge to now entertain on appeal the claim that, based on the first day's voir dire, this juror should have been excused for cause. The trial court offered to do so, and defendant refused that offer, saying that on the basis of the first day's answers, the defendant liked the juror. By the end of the second day of voir dire, the trial court concluded that the juror had been rehabilitated. I see no abuse of discretion in that determination.[*]
However, the defendant also lodged a challenge for cause against juror Gantner. This juror was equivocal throughout both days' voir dire about whether she could be fair or not. The jurors had been questioned about their feelings about alcohol, given that alcohol use played a part in the circumstances of the crime. Juror Gantner had been the victim of a serious traffic accident caused by someone who had been driving under the influence. Counsel and the court all were in accord that this juror had been equivocal in her responses. In my view that particular challenge for cause should have been granted. See Hill v. State, 477 So.2d 553 (Fla. 1985); Price v. State, 538 So.2d 486 (Fla. 3d DCA 1989); Smith v. State, 516 So.2d 43 (Fla. 3d DCA 1987); Robinson v. State, 506 So.2d 1070 (Fla. 5th DCA 1987). I concur in the ordering of a new trial.
NOTES
[1] Coggins actually appeals the denial of his challenge for cause of four prospective jurors but we deem the denial of only one such challenge to be meritorious.
[2] During the first day of voir dire, James Conley, after having testified that he, his family and neighbors had all been victims of crimes, responded to further questions as follows:

[Court]: "Are you able to lay aside the experiences your family has had?"
[Conley]: "There has been a lot of experiences, a lot of experiences."
[Court]: "Well, would they affect your ability to sit as a fair and impartial juror?"
[Conley]: "I believe so."
* * * * * *
[Prosecutor]: "What you would be doing as a juror is assessing these facts and following the law as it applies to this case, and this Defendant and you talked about some experiences where your family has bee [sic] victimized, but I wanted to know can you assess these facts and follow the law in this case and be fair to both sides."
[Conley]: "I would have a hard time, I don't know. I don't know until I hear the whole facts."
* * * * * *
[Court at sidebar]: "This man was on my list I think. I don't know why you are pursuing him. He doesn't want to agree to be fair and impartial on any question."
[Prosecutor]: "Well, I was presuming to read his mind, that is why I [sic] like to give him a shot."
[Court]: "This is a waste of time, questioning him. I think he has disqualified himself and hasn't been rehabilitated. I just wanted to caution you. I don't think its productive to ask him any questions."
* * * * * *
During the second day of voir dire, defense counsel questioned Conley about criminal activity in Conley's neighborhood in the aftermath of Hurricane Andrew because witnesses in the trial, Coggins included, had migrated to South Dade to make repairs.
[Defense]: "If you hear testimony about people who came down here to do some work, people involved in this trial came down from other parts of the country to do some work after the hurricane. Would that affect you with the way you view the evidence?"
[Conley]: "With people coming down?"
[Defense]: "I mean, some people that are involved came from Kentucky to do some work around the area."
[Conley]: "Right."
[Defense]: "If you hear that they did that, will that affect you in view of the fact that you had problems with people that worked around your house?"
[Conley]: "Well, I know that there were a lot of people coming down that were scams. We were aware of that."
* * * * * *
[Defense]: "Anybody have a problem with that, you have to have an abiding conviction of guilt before you find the Defendant guilty. What is an abiding conviction of guilt, for example, Mr. Conley, you have to have a hundred percent idea in your mind before you can find him guilty of first degree murder, do you understand that, Mr. Conley?"
[Conley]: "Yes."
[3] Apparently, the court surmised on the first day of voir dire that juror Conley was attempting to avoid jury service, but on the second day, the court altered its perception:

[Court]: "Today he is much more relaxed. I must say that yesterday I was much more concerned about his demeanor. However, yesterday when I suggested that he was nonverbal and I had no agreement from counsel in that regards and you both agreed yesterday that you wanted to inquire further. After hearing from him today, I didn't detect any bias or prejudice that would disqualify him."
[*] Indeed, the final statement by the juror quoted in footnote 2 of the majority opinion indicates that the juror would require a very high standard of proof from the state, an answer which is favorable to the defendant.