795 So.2d 279 (2001)
Luis Alberto MARTINEZ, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D99-3010.
District Court of Appeal of Florida, Third District.
October 3, 2001.
*280 Bennett H. Brummer, Public Defender and Rosa C. Figarola and Valerie Jonas, Assistant Public Defenders, for appellant.
Robert A. Butterworth, Attorney General, and Fredericka Sands and Regine Monestime, Assistant Attorneys General, for appellee.
Before JORGENSON, GODERICH and SORONDO, JJ.
SORONDO, J.
Luis Alberto Martinez, defendant, appeals a final judgment of conviction and sentence on the crimes of burglary of an occupied dwelling and resisting an officer without violence. He raises two issues on appeal. We reverse.
The dispositive issue in this appeal involves the trial court's denial of defendant's motion to excuse prospective juror Stamper for cause. During voir dire examination, Mr. Stamper explained to the court and counsel that his father had been a police officer for thirty years. While being questioned by the prosecutor, the following exchange took place:
[PROSECUTOR]: Now, your fatherI have to go to the law enforcement question specifically with you because your father had a lot of years of experience on the force. He must have had a lot of friends over different times who were officers or told you about people he didn't like too much as officers. Would your fatherI mean, it's your father would you seeing them first-hand, would that affect how you view officers?
[STAMPER]: Yeah. Yes, it would.
[PROSECUTOR]: Would you be able to apply the same rules to any other witness or just think I know a little bit extra about these people, that they either start up a little bit better or worse than others?
[STAMPER]: Yeah.
[PROSECUTOR]: But based on having known either a lot of people in uniform, in tee-shirts, or bathing suits, you might start off with the belief that yeah, I should believe that person or no, they're not believable. I just don't believe them or they start behind the eight ball with me. Do you have those feelings about police officers at all?
[STAMPER]: Yes.
[PROSECUTOR]: And which would they be?
[STAMPER]: It would be positive.
[PROSECUTOR]: Do you think you could set aside and treat an officer, if the judge instructs you, that the same rules are to be applied to all types of persons? Could you set thatyou know, normally, you know, I see a cop I *281 think, "Hey, you know, good guy, off the bat." Could you set aside and follow the law as the judge instructs you?
[STAMPER]: Yes.
(Emphasis added). The prosecutor had no additional questions for Mr. Stamper. During defense counsel's examination, the following exchange occurred:
[DEFENSE COUNSEL]: While I'm speaking to you, you mentioned that with police officers, because of your dad and the friends that he has, I think you said, start better off in your mind.
[STAMPER]: I usually try to give them the benefit of the doubt.
[DEFENSE COUNSEL]: And I know the judge or the state mentioned that the judge reads the law. Would you follow the law? And it's easy to just say yes. When police officers come in here to testify, are you nonetheless going to, at least, to try to give them the benefit of the doubt because of your personal experiences?
[STAMPER]: The nature, yeah, of the job, I probably would straight out give them benefit of the doubt. It doesn't mean I'd do it all the time.
[DEFENSE COUNSEL]: I understand that. But just as a first instinct?
[STAMPER]:As an impulse, yeah, I think I would.
(Emphasis added).
Before defense counsel could move on to the next prospective juror, the judge interrupted and continued questioning Mr. Stamper:
THE COURT: Before you go on to [the next person], what do you mean by, "as an impulse?" It means
[STAMPER]: Because I've heard both from my father as far as good cop/bad cop, and I justI guess I don'tI'd have to be presented with an individual first, at least in my eyes, before I make that acsertation (sic) one way or the other for sure as to how that person you know?
THE COURT: Are you going to believe him just because he's a cop?
[STAMPER]: No.
THE COURT: Are you going to disbelieve him just because he's a cop?
[STAMPER]: No.
THE COURT: O.K.
[STAMPER]: It would come out in an individual case, I suppose. It would just depend, you know, after the person spoke and how I felt about that person and, maybe the person's credentials on the force and whatnot.
THE COURT: Okay, sounds like you're saying that you judge his or her credibility based on his or her credibility.
[STAMPER]: It's also in lieu of, in lieu of the job, too.[1]
THE COURT: Okay.
[STAMPER]: I could do that with anybody.
THE COURT: Right.
[STAMPER]: But in terms of an officer, I guess the impulse, I would readily assume it, I mean, in a more positive role as just a regular person.
THE COURT: Are you saying that you wouldn't scrutinize or analyze what it is they're saying to you; you just automatically take it as a truth?
[STAMPER]: No, I would analyze it absolutely.
*282 (Emphasis and footnote added). At this point, the trial judge discontinued her inquiry and allowed defense counsel to proceed. The final exchange with Mr. Stamper was the following:
[DEFENSE COUNSEL]: Let me ask you something in furtherance of that. Suppose you're on the jury and you decide that the state has not proven their case and you're forced, or maybe you feel you're forced to vote not guilty. How would you feel going back to your father and maybe a lot of your friends and your father's friends, I don't know who they are, and saying, "I found him not guilty. The cops are horrible. They were all liars. I didn't believe them." Would you feel uncomfortable?
[STAMPER]: No, absolutely not, in terms of my father.
[DEFENSE COUNSEL]: And what about the other people?
[STAMPER]: Possibly. Possibly, because I characterize my father as being different than the others.
(Emphasis added).
At the conclusion of voir dire examination, defense counsel moved to strike Mr. Stamper for cause arguing that he was, at best, equivocal on the subject of whether he would give more credence to the testimony of a police officer. The court denied the motion.[2]
The Florida Supreme Court has held that the test for juror competency is "whether the juror can lay aside any bias or prejudice and render his [or her] verdict solely upon the evidence presented and the instructions on the law given to him [or her] by the court." Turner v. State, 645 So.2d 444, 447 (Fla.1994)(quoting Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984)). "The juror should be excused if there is any reasonable doubt about the juror's ability to render an impartial verdict." Id; see also Coggins v. State, 677 So.2d 926 (Fla. 3d DCA 1996); King v. State, 622 So.2d 134 (Fla. 3d DCA 1993); Price v. State, 538 So.2d 486 (Fla. 3d DCA 1989); Jefferson v. State, 489 So.2d 211 (Fla. 3d DCA 1986). The law is also clear that close calls on the issue of juror competency should be resolved in favor of removal. In Williams v. State, 638 So.2d 976, 978 (Fla. 4th DCA 1994), the Fourth District Court of Appeal stated that:
Because impartiality of the finders of fact is an absolute prerequisite to our system of justice, we have adhered to the proposition that close cases involving challenges to the impartiality of potential jurors should be resolved in favor of excusing the juror rather than leaving doubt as to impartiality.
See also Straw v. Associated Doctors Health & Life, 728 So.2d 354 (Fla. 5th DCA 1999); James v. State, 736 So.2d 1260 (Fla. 4th DCA 1999); Chapman v. State, 593 So.2d 605 (Fla. 4th DCA 1992); Longshore v. Fronrath Chevrolet, Inc., 527 So.2d 922 (Fla. 4th DCA 1988); Sydleman v. Benson, 463 So.2d 533 (Fla. 4th DCA 1985).
For every acceptable response Mr. Stamper gave during voir dire examination, *283 he gave another that cast doubt on his ability to evaluate police testimony impartially. Even during the trial judge's inquiry, he equivocated and gave contradictory answers, which the judge felt compelled to try to clarify. He concluded his examination by admitting that he might feel uncomfortable telling his father's friends that he had voted for acquittal. Based on this record we conclude that there was a reasonable doubt as to Mr. Stamper's ability to render an impartial verdict.
The state argues that Mr. Stamper was rehabilitated when he stated that he could follow the trial court's instructions. We disagree. The rehabilitation of prospective jurors is a tricky business that often leads to reversal. Although Florida law allows for the rehabilitation of prospective jurors whose responses during voir dire examination raise questions concerning their impartiality, "[a] juror is not impartial when one side must overcome a preconceived opinion in order to prevail." Price v. State, 538 So.2d 486, 489 (Fla. 3d DCA 1989). As the Florida Supreme Court has observed:
It is difficult, if not impossible, to understand the reasoning which leads to the conclusion that a person stands free of bias or prejudice who having voluntarily and emphatically asserted its existence in his mind, in the next moment under skillful questioning declares his freedom from its influence. By what sort of principle is it to be determined that the last statement of the man is better and more worthy of belief than the former?
Johnson v. Reynolds, 97 Fla. 591, 599, 121 So. 793, 796 (1929).
Viewing this record in its entirety, we find Mr. Stamper's general statement to the prosecutor that he could follow the judge's instructions, and his subsequent assurances to the trial judge to be insufficient to eliminate the many doubts raised by his other comments. The denial of defendant's motion to excuse this prospective juror for cause was manifestly erroneous. See Mills v. State, 462 So.2d 1075 (Fla.1985).
Reversed and remanded for a new trial.
NOTES
[1] Although the trial judge seems to have been satisfied with this answer, we find it unclear in light of Mr. Stamper's next two responses.
[2] Mr. Stamper did not serve on the jury. When the court denied the motion to strike Mr. Stamper for cause, defendant struck him by way of a peremptory challenge. Later in the jury selection process defendant sought to strike prospective juror Benguigui. Having exhausted all peremptory challenges, defendant requested an additional peremptory, which request was denied. Defendant objected and argued that had the court excused Mr. Stamper for cause he would not have had to exercise a peremptory challenge and would have used that challenge to strike Benguigui. If granted the additional challenge, defendant advised the court he would have stricken Benguigui. This juror ultimately served on the jury.