934 So.2d 11 (2006)
Norwin GUZMAN, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D03-3085.
District Court of Appeal of Florida, Third District.
February 15, 2006.
Rehearing Denied July 26, 2006.
Bennett H. Brummer, Public Defender, and Valerie Jonas, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Maria T. Armas, Assistant Attorney General, for appellee.
Before WELLS and CORTIÑAS, JJ., and SCHWARTZ, Senior Judge.
CORTIÑAS, Judge.
The defendant, Norwin Guzman ("Guzman"), appeals from his convictions and sentences. We affirm.
On March 1, 2003 Guzman was charged by information with attempted second degree murder of a law enforcement officer, armed robbery, armed carjacking, armed kidnapping of a law enforcement officer, escape, depriving an officer of her means of protection/communication, and use of false identification. The jury found Guzman *12 guilty of: (1) battery, as a lesser included offense of attempted second degree murder; (2) battery, as a lesser included offense of armed kidnapping; (3) robbery with a firearm; (4) carjacking with a firearm; (5) escape; (6) depriving an officer of her means of protection/communication; and (7) unlawful possession of identification.
On appeal, Guzman claims that the trial court erred in refusing to grant a challenge for cause against prospective juror Thies. During jury selection, Thies indicated that his son had been a police officer in Florida, but that his son later worked in the computer industry in Colorado and currently serves as a reserve officer. During voir dire, the following exchange took place:
THE COURT:knowing in this case as I've already told you that the victim is a law enforcement officer, do you think you might not be able to be fair and impartial in this case?
MR. THIES: I think I can be fair.

THE COURT: Okay. We're also going to be hearing testimony from police officers, do you think you might give them more credibility than anybody else because of your relationship with your son as a police officer?
MR. THIES: I would listen to the judgment of a police officer because they are supposed to be, you know, truthful in the matter. I wouldn't say that I would always give the [sic] credibility because, you know, he's at a different angle. For instance, with a situation you'll always see things different from that standpoint. I think I can be fair.
...
THE COURT: Would you treat them differently simply because he's a police officer, he's going to come up here wearing a police uniform, would you treat him differently than anybody else because of that?
MR. THIES: The only thing I can say is that I would do the best I could.
THE COURT: Okay. Well, can you do it?
MR. THIES: I think so.
...
[PROSECUTOR]: Mr. Thies, some of the people who testify in this case may be police officers, and they may be testifying about what they do as police officers, what their work is. My question to you and to everyone, same question, because I know that you have some contact with law enforcement, other people do as well.
If a witness sits in that chair and says I make my living as a cop, I'm a police officer, would you tend to believe whatever that person says just because they are a police officer and your son was an officer and maybe they remind you a little of your son. Will you do that?
MR. THIES: I'll say that I would try to be impartial but I have a tendency to be for the law.
...
[PROSECUTOR]: Would you give more attention to the testimony of somebody who was a police officer and think that you would believe what they say more than someone else?
MR. THIES: That is difficult.
[PROSECUTOR]: It is. It's difficult being a juror ..., but it is a job that has to be done fairly
MR. THIES: Yes.
[PROSECUTOR]:fairly, so that's why [I] ask you over and over again
MR. THIES: Okay.
[PROSECUTOR]:can you do this?

*13 MR. THIES: If there is another police officer or another one on hand and his story was similar to the one that you had here on the stand, yes, I would give quite a bit of prejudice to it. [PROSECUTOR]: So you're looking for what we might call corroboration?

MR. THIES: Corroboration.

[PROSECUTOR]: That the testimony of one person would agree with another person and that that testimony agree with the evidence, that would help you decide that person was believable?
MR. THIES: Yes.
[PROSECUTOR]: Let's get down to the very bottom of the equation though.
MR. THIES: Okay.
[PROSECUTOR]: Let's assume you're just listening to what somebody is saying, are you going to believe a police officer more than someone who's not a police officer?

MR. THIES: Not necessarily. As I said I believe earlier, it depends on perhaps there was another police officer that saw things from another angle.

...
[PROSECUTOR]: Okay. Mr. Thies, do you think that this part of the trial process, jury selection, where the lawyers and the Judge are asking questions, do you think that's important?
MR. THIES: I think it's very important to be able to find the people that are impartial in this case.

(emphasis added).
Thereafter, defense counsel began questioning Thies to determine whether he was competent to serve as a juror. The following exchange took place:
[DEFENSE COUNSEL]: Sure. And when two of your sons came to you and were pointing the finger at each other saying he started it; no, he started it. Would you normally want to hear from both of them, hear their version?
MR. THIES: I would also like to hear from somebody else who saw it.
[DEFENSE COUNSEL]: Okay. But you would expect to hear from both of them telling you what happened?

MR. THIES: Yes, I would. Yes, I would.

[DEFENSE COUNSEL]: Okay. Would everyone agree that's a natural tendency to want to hear from both sides, hear from both people?
PROSPECTIVE JURORS: Yes. (Collectively.)
...
[DEFENSE COUNSEL]: How would you feel if Mr. Guzman didn't testify; would itmight it influence your decision?
MR. THIES: Not necessarily, but if he did testify and there were things that came out that he could collaborate, maybe it would shift the case in his favor.

[DEFENSE COUNSEL]: Okay. Would you go in the jury room if he didn't testify and say, if he was innocent, why didn't he get up on the stand and say so, what's he's [sic] hiding, chances are, you know, he's probably guilty?
MR. THIES: I would still have to base it upon the evidence that was presented.

...
[DEFENSE COUNSEL]: [H]ow [do] you feel about police officers versus civilians, do you think that police officers are less likely to lie under oath than civilians?

*14 Can you still look at them and scrutinize their testimony but all things being equal, a police officer because they're police officers are less likely to lie than civilian?
MR. THIES: To me that's a difficult question because I would have to look at collaboration between the stories.

...
[DEFENSE COUNSEL]: Do you think that [a police officer taking an oath to swear to tell the truth is] less likely to lie; not be mistaken, but out and out lie. Do you think a police officer could do that?
MR. THIES: I think if he is a veteran on the force and he's had a good record I would say he would be less likely to lie.
[DEFENSE COUNSEL]: Than a civilian?

MR. THIES: I couldn't say that because I know there's a difference in people.

[DEFENSE COUNSEL]: Okay.
MR. THIES: And I mean I really this is the best answer that I could give.

[DEFENSE COUNSEL]: All right.
MR. THIES: Because everyone is different.

[DEFENSE COUNSEL]: That's true. What if you hear from two people that are both saying opposite things and only one person is being truthful, the other person is lying. They both seem believable, the only difference that you can find is that one is a police officer and one of them isn't.
Would you be more likely to think that that person who is a police officer is telling the truth?
MR. THIES: If the evidence is on his side I would say yes.

[DEFENSE COUNSEL]: Well, let's say they're bothyou can't tell, they both seem believable. The only difference is one of them is a police officer and one of them isn't. Would you tend to give the one who is a police officer a little bit more credibility because he is a police officer?
MR. THIES: I could not really honestly say, I really can't.
(emphasis added).
Defense counsel attempted to challenge Thies for cause, claiming that Thies repeatedly expressed a bias in favor of police credibility, and that he never indicated unequivocally that he could set aside this bias. The State opposed the challenge for cause claiming that Thies repeatedly stated that police officers were no more likely to tell the truth than civilians, and that he would have to hear the evidence and testimony before determining whom to believe. The trial court denied defense counsel's motion to strike Thies for cause. Defense counsel exercised its last peremptory challenge on Thies. Defense counsel requested an extra peremptory challenge for juror Samson-Mojares, identifying Samson-Mojares as an objectionable juror. The trial court denied the request for an extra peremptory challenge and Samson-Mojares sat on the jury.
It is within the trial court's province to determine whether a challenge for cause should be granted based on a juror's competency, and such a determination will not be disturbed on appeal absent manifest error. Busby v. State, 894 So.2d 88, 95 (Fla.2004)(quoting Fernandez v. State, 730 So.2d 277, 281 (Fla.1999)); Morrison v. State, 818 So.2d 432, 442 (Fla.2002); State v. Williams, 465 So.2d 1229, 1231 (Fla. 1985); Mills v. State, 462 So.2d 1075, 1079 (Fla.1985). "The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render *15 a verdict solely on the evidence presented and the instructions on the law given by the court." Busby, 894 So.2d at 95 (citing Lusk v. State, 446 So.2d 1038, 1041 (Fla. 1984)).
The trial court should excuse a juror for cause "if any reasonable doubt exists as to whether the juror possesses an impartial state of mind." Id. (citing Bryant v. State, 656 So.2d 426, 428 (Fla. 1995); Hill v. State, 477 So.2d 553, 556 (Fla.1985)). A cause challenge should not be granted if the juror declares, and the court determines, that the juror "can render an impartial verdict according to the evidence." § 913.03(10), Florida Statutes (2003). Moreover, a juror should not be excused for cause merely because he/she gives equivocal responses. Busby, 894 So.2d at 96. Rather, the trial court should evaluate the questions posed to and the answers received from the juror to determine whether the juror's responses are "equivocal enough to generate a reasonable doubt" as to the juror's fitness to serve. Id.
As long as there is support in the record for the trial court's decision to deny a cause challenge, the decision will be upheld on appeal. Id. at 95 (citing Gore v. State, 706 So.2d 1328, 1332 (Fla.1997); Mendoza v. State, 700 So.2d 670, 675 (Fla.1997)). A trial judge has a unique vantage point from which to evaluate potential juror bias and make observations of the juror's voir dire responses, which cannot be discerned by this court's review of a cold appellate record. Morrison, 818 So.2d at 442; Mendoza, 700 So.2d at 675; Smith v. State, 699 So.2d 629, 635-36 (Fla.1997)(citing Taylor v. State, 638 So.2d 30, 32 (Fla.1994)). Furthermore, a trial judge has broad discretion regarding juror competency because "[t]he trial judge hears and sees the prospective juror and has the unique ability to make an assessment of the individual's candor and the probable certainty of his answers to critical questions presented to him." Williams, 465 So.2d at 1231.
Based on the record before us, we conclude that the trial court did not commit manifest error in determining that prospective juror Thies was competent to serve as a juror. See Williams, 465 So.2d at 1231. Viewing the voir dire questions and answers in their entirety, we conclude that Thies' statements "reveal[ ] nothing more than an inclination toward law enforcement work and upholding of the law." See Skipper v. State, 400 So.2d 797, 798 (Fla. 1st DCA 1981), rev'd on other grounds, 420 So.2d 877 (Fla.1982); see also Peri v. State, 412 So.2d 367 (Fla. 3d DCA 1981)(holding that the trial court acted within its discretion in refusing a cause challenge against a prospective juror who indicated that he would give police testimony a little more credence and that his acquaintanceship with police officers would have "a little effect," but who ultimately stated that he would keep an open mind and follow the instructions of law given by the court). The trial judge, who observed and evaluated Thies' demeanor, was in the best position to determine whether or not it was necessary to disqualify Thies for cause. See Skipper, 400 So.2d at 798.
We note that Guzman's reliance on Salgado v. State, 829 So.2d 342 (Fla. 3d DCA 2002) and Martinez v. State, 795 So.2d 279 (Fla. 3d DCA 2001) is misplaced as those cases are factually distinguishable. In Salgado, the prospective juror initially stated that, "all things being equal," he would give more weight to the testimony of a police officer than to the testimony of a civilian. Salgado, 829 So.2d at 343. After some discussion with the trial judge, the prospective juror indicated that there was probably no difference in the credibility of a police officer versus a civilian. Id. Later, during questioning by defense counsel, *16 the prospective juror indicated that if a police officer and a civilian are "looking at the same thing," he would give more credence to the police officer because, from his experience, "the police officer may be a little more credible." Id.
In Salgado, this court expressed concern about the prospective juror's equivocal responses, which amounted to a "preconceived notion that a police officer's testimony was automatically worthy of more credibility than a civilian witness." Id. at 344-45 (emphasis added). We further stated that, "[e]ven when a prospective juror eventually states that he will follow the law, the court should grant a challenge for cause if it appears that the prospective juror is nevertheless not in the state of mind to do so." Id. at 345.
Similarly, in Martinez, the prospective juror stated that the fact that his father had been a police officer for thirty years would affect how he viewed police officers. Martinez, 795 So.2d at 280. The prospective juror responded affirmatively when questioned whether he "might start off with the belief that" police officers are more credible. Id. The prospective juror later indicated that he could set aside his bias and follow the law. Id. at 280-81. Then, when questioned by defense counsel, the prospective juror repeatedly admitted that he would "usually try to give [police officers] the benefit of the doubt" and that, as an "impulse," he would "straight out give them [the] benefit of the doubt" because of the nature of the job. Id. at 281. Subsequently, during a discussion with the trial judge, the prospective juror indicated that he would not believe a witness just because the witness was a police officer. Id. Yet the prospective juror went on the state that he would make his judgment based on the credibility of the witness "in lieu of the [witness'] job," and that he may look at the witness' "credentials on the force and whatnot." Id.
The record in Martinez clearly established that, for every response given by the prospective juror that negated his bias, he gave another response that cast doubt on his ability to impartially evaluate police testimony. Id. at 282. The prospective juror gave contradictory answers that created a reasonable doubt as to his ability to set aside his preconceived notions and render an impartial verdict. Id. at 283.
The facts of the instant case do not rise to the level of potential juror bias that concerned this court in Salgado and Martinez. In the instant case, prospective juror Thies stated at the outset, "I wouldn't say that I would always give [a police officer] credibility because, you know, he's at a different angle." Thies stated that he would be fair and that he would do the best he could. Throughout his voir dire responses, Thies consistently indicated that he would look for corroborative testimony and that he would expect to hear from both sides, but Thies stressed that he would ultimately base his decision "upon the evidence presented." Thies also expressed the importance of juror impartiality. Moreover, when Thies' responses are read in context and in their entirety, it is clear that Thies' use of words such as "I think," "I would try," and "not necessarily," do not establish that he was equivocal. Instead, a thorough reading of his record responses suggests that Thies used such terms when reasoning through his answers.
However, even assuming that Thies' words tended to show equivocation, we conclude that the trial court did not commit manifest error in determining that Thies could render an impartial decision. See, e.g., Busby, 894 So.2d at 96 (holding that a juror need not be excused for cause merely because he gives equivocal responses). *17 Again, we emphasize that the trial judge was in the best position to observe Thies' demeanor, assess his candor, and determine whether Thies was impartial. After a thorough review of the record, we cannot find that the trial judge committed manifest error in determining that Thies was competent to serve as a juror. See, e.g., Morrison, 818 So.2d at 442 (holding that an appellate court must give deference to the trial judge's determination of juror competency). Since we hold that Guzman failed to show manifest error, there is no basis for concluding that the trial judge erred in denying Guzman an extra peremptory challenge for juror Samson-Mojares. See Williams, 465 So.2d at 1231.
We affirm on all other issues raised on appeal.
Affirmed.