CORTINAS, J.
After a jury trial, the Defendant, Rafael Matarranz, was found guilty of the first-degree murder and burglary of Lidia *535 Giangrande. On appeal, the Defendant claims that the trial court erred in its denying a challenge for cause against prospective juror Ceballos. After review of the record under the applicable standard of review, we affirm.
During voir dire, the following exchange took place:
THE COURT: Ms. Ceballos, I wanted to follow-up with you.
You had answered a question about the fact that this is a burglary case and it had to do with whether or not you thought you could be a fair juror in this case.
Tell me what you were thinking.
JUROR CEBALLOS: It is just from past experiences.
I have been the victim of burglaries like my house when I was younger and also I wrote down that my cousin was a victim of fraud and like trying to cash fake checks and it wasn’t really his fault and everything that happened with that and how it affected my family. That still affected me and I hold a grudge on that and he was pretty much fleeing from whoever that guy was taking checks on and my cousin was the unfortunate one that happened to cash it and that stayed on his record and it is something that I hold against him. How it affected me, my parents and my whole family.
I don’t think that I could be fair against him because I hold that grudge.
THE COURT: The grudge that you hold is against someone who violates the law?
PROSPECTIVE JUROR: Right.
THE COURT: But the law holds a grudge on people who violate the law once a person is convicted of violating the law, if a person is convicted and it is in my division, it is my job to sentence the victim but I hear what you are saying, but I want to make sure that you understand that this trial would not be about whether or not it is okay to have a grudge against people who commit crimes.

The question is going to be was a crime committed and if it was committed whether Mr. Matarranz is the one that committed it; you understand that?

PROSPECTIVE JUROR: Yes.
[[Image here]]
THE COURT: So, you don’t hold a grudge against people who are accused of something that they didn’t do? PROSPECTIVE JUROR: No.
It is just — I don’t know how it affected like — I don’t know — it is something that just stays there.
I know how it affected us and how everything happened. It was during the holiday season and it was just crazy and it just makes me sad about it and it brings back bad memories.
[[Image here]]
PROSECUTOR: You have not heard any evidence yet with regard to Mr. Matarranz, right?
PROSPECTIVE JUROR: Yes.
PROSECUTOR: Are you able to listen to the testimony and the evidence in this case with an opened [sic] mind?
PROSPECTIVE JUROR: I could have an open mind about it, but it is still— knowing myself I think I would lean more towards the State of Florida just because I don’t think that it is right for someone to come in and take something that someone worked so hard for and take their life away from that person.
PROSECUTOR: Can you follow the judge’s law and the law in the State of Florida and say I know that I favor the defendant, because he looks like a family member or I favor the State because I *536 want to be a State Attorney when I grow up. The question is, can you follow the law and not say I’m yoiny to be more for the defendant or more for the State and just sit here and listen to the evidence and make the State prove our case beyond a reasonable doubt, because that is what we have to do?
PROSPECTIVE JUROR: Yes.
PROSECUTOR: So my question is, can you do that even though you may feel more sympathetic particular [sic] towards one side or the other.

Can you put aside your feelinys and sit here with an open mind and see whether or not the State of Florida at the end of the case has proved the charges of murder in the first degree against the defendant, can you do that honestly?

PROSPECTIVE JUROR: Yes, I think I could.
Just like you say maybe I would lean a little more to one side, but I would have to hear everything before I can actually make a decision.
PROSECUTOR: You can’t lean.
That is what you are saying when you say I think you are going to make the State nervous and you are going to [make defense counsel] nervous. You can’t say I think.

My question, can you put aside your feelings for the State or the feelings for the defendant, put them aside if you are selected as a juror and listen to the evidence that comes forward on the case and make a determination at the conclusion of all the evidence as to whether or not the State of Florida has proved these two charges against the defendant, [sic]

Can you do that, honestly?

PROSPECTIVE JUROR: Yes.
(emphasis added).
Thereafter, defense counsel questioned Ms. Cebados to determine whether she was competent to serve as a juror. The following exchange took place:
DEFENSE COUNSEL: I’m confused. I’m sorry.
I’m very simple.
You started telling [Y]our [H]onor that you couldn’t do what you just told the prosecutor that you are going to do.
PROSPECTIVE JUROR: I can put it aside but, it is just that with my past experiences — I have an old mind in all things and I know that I can do it.
It is just that I rather not, just because — I mean, put it aside, but I can have an open mind and put all my feelings aside.
[[Image here]]
DEFENSE COUNSEL: Are those feelings going to make it easier for the State to secure a conviction against Mr. Matarranz, if you sit as a juror in this case?
PROSPECTIVE JUROR: I would have to hear — like I would have to hear the whole thing.
[[Image here]]
DEFENSE COUNSEL: Do you think those experiences that you have and those experiences that you are remembering today, do you think that they are going to affect you as you deliberate and make the decision whether or not Mr. Matarranz is guilty of the charge of burglary and the charge of murder, [sic]
PROSPECTIVE JUROR: No, ‘cause I would have to hear it. I don’t think so.
(emphasis added).
The next day, Ms. Ceballos was again questioned as to her ability to be fair and *537 impartial and decide the case based solely on the evidence presented at trial.
PROSECUTOR: Ms. Ceballos, same question to you.
You kind of went back and forth and I want to ask you, if you can promise that you will not hold it against the defendant because he doesn’t have a burden, if he decides not to testify or if they decide not to put on witnesses, are you okay with that?
PROSPECTIVE JUROR: Yes.
PROSECUTOR: And you understand that it is the State’s burden to prove him guilty beyond and to the exclusion of every reasonable doubt?
PROSPECTIVE JUROR: Yes.
PROSECUTOR: The bottom line is, you may want to hear, can you follow the law that they do not have to do anything in this case?
PROSPECTIVE JUROR: Yes.
PROSECUTOR: And hold the State to its burden?
PROSPECTIVE JUROR: Yes.
Later that day, defense counsel posed the following questions:
DEFENSE COUNSEL: As we are sitting here today, have you been thinking about what we talked about yesterday?
PROSPECTIVE JUROR: And I talked about it and I have a more opened [sic] mind about it and I gave a thought and I have opened [sic] mind and that anything that happened to me in the past has nothing to do with this case.
DEFENSE COUNSEL: Would you like Mr. Matarranz to testify?
PROSPECTIVE JUROR: It doesn’t matter. It depends on the evidence whether he is guilty or not.

As of right now he is innocent because there is nothing presented to me that proves otherwise.

(emphasis added).
Defense counsel attempted to challenge Ms. Ceballos for cause, claiming that she could not be fair and impartial because she initially stated that she would hold a grudge against people who violate the law. The State opposed the challenge for cause. Although Ceballos’ questionnaire may be considered equivocal insofar as she stated she may “lean towards the State” because she had been a victim of a burglary when she was eight years old, Ceballos’ subsequent statements were sufficient to show she was competent to serve as a juror. The trial court denied defense counsel’s motion to strike Ms. Ceballos for cause, stating
:[h]aving only heard testimony from yesterday, I would have been inclined to grant it, but her testimony from yesterday includes the fact that there had been this burglary when she was eight years old, that was emotional for her ... and today based on her demeanor, I believe from her reflection, I think she was embarrassed and she said that she thought about it last night and she said that she felt that she had more of an opened [sic] mind today and that she could be fair and she realized that that burglary that happened to her had nothing to do with this case.
Defense counsel initially accepted Ms. Ceballos, but later used its sixth peremptory challenge on Ms. Ceballos. At the conclusion of voir dire, defense counsel requested an extra peremptory challenge, claiming that the trial court erred in failing to strike five jurors for cause, not naming Ms. Ceballos, and identified objectionable jurors that he would have stricken if he had an additional peremptory challenge but, notably, did not name Ms. Ceballos *538 among those jurors. The trial court denied the request for an extra peremptory challenge and only one named “objectionable” juror sat on the jury.
As in Guzman v. State, 934 So.2d 11 (Fla. 3d DCA 2006), we find that the very experienced and able trial judge did not commit manifest error in denying defense counsel an extra peremptory challenge for prospective jurors.
In Guzman, we concluded that, the voir dire questions and the prospective juror’s answers, read in context and in their entirety, did not establish that the prospective juror was equivocal. Id. at 16. Further, we stressed that even if the prospective juror’s “words tended to show equivocation ... the trial court did not commit manifest error in determining that [the prospective juror] could render an impartial decision,” emphasizing that “the trial judge was in the best position to observe [the prospective juror’s] demeanor, assess his candor, and determine whether [he] was impartial.” Id. at 16-17.
It is well established that “[i]t is within the trial court’s province to determine whether a challenge for cause should be granted based on a juror’s competency, and such a determination will not be disturbed on appeal absent manifest error. Id. at 14 (citing Busby v. State, 894 So.2d 88, 95 (Fla.2004)); see also Morrison v. State, 818 So.2d 432, 442 (Fla.2002); Fernandez v. State, 730 So.2d 277, 281 (Fla.1999); State v. Williams, 465 So.2d 1229, 1231 (Fla.1985); Mills v. State, 462 So.2d 1075, 1079 (Fla.1985). The trial court must determine “whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court.” Guzman, 934 So.2d at 14-15 (quoting Busby, 894 So.2d at 95); see also Levy v. State, 50 So.3d 1218, 1220 (Fla. 4th DCA 2010). Therefore, a challenge for cause should not be granted by the trial court where it determines the prospective juror “can render an impartial verdict according to the evidence,” such as in a case where a prospective juror’s initial responses may be considered equivocal. Guzman, 934 So.2d at 15 (quoting § 913.03(10), Fla. Stat. (2011)).
Importantly, “[a]s long as there is support in the record for the trial court’s decision to deny a cause challenge, the decision will be upheld on appeal.” Id. at 15 (citing Busby, 894 So.2d at 95); see also Gore v. State, 706 So.2d 1328, 1332 (Fla.1997); Mendoza v. State, 700 So.2d 670, 675 (Fla.1997); Trotter v. State, 576 So.2d 691, 694 (Fla.1990) (“On appeal the question is not whether a reviewing court might disagree with the trial court’s findings, but whether those findings are fairly supported by the record.”). This is because “[a] trial judge has a unique vantage point from which to evaluate potential juror bias and make observations of the juror’s voir dire responses, which cannot be discerned by this court’s review of a cold appellate record.” Guzman, 934 So.2d at 15 (citing Morrison, 818 So.2d at 442); see also Mendoza, 700 So.2d at 675; Smith v. State, 699 So.2d 629, 635-36 (Fla.1997). Specifically, “[t]he trial judge hears and sees the prospective juror and has the unique ability to make an assessment of the individual’s candor and the probable certainty of his answers to critical questions presented to him.” Guzman, 934 So.2d at 15 (quoting Williams, 465 So.2d at 1231).
We conclude that the trial court did not commit manifest error in determining that prospective juror Ceballos was competent to serve as a juror. The totality of prospective juror Ceballos’ responses demonstrated her ability to be fair and impar *539 tial and decide the case based solely on the evidence presented at trial. See Thomas v. State, 958 So.2d 1047, 1050-51 (Fla. 2d DCA 2007) (“[T]he mere fact that a juror gives equivocal responses does not disqualify that juror for service.”); see also Levy, 50 So.3d at 1220 (“[Wjhen viewed as a whole, [the prospective juror’s] responses do not emulate the sort of equivocation typically held to raise doubts about a potential juror’s impartiality.”). Prospective juror Ceballos consistently indicated that 1) she would not hold it against Mr. Matar-ranz if he did not testify or if the defense did not put on witnesses, 2) she understood that it was the State’s burden to prove Mr. Matarranz guilty beyond a reasonable doubt, 3) Mr. Matarranz did not have any burden of proof, and 4) she would hold the State to its burden of proof based on the evidence presented. Moreover, Ms. Cebal-los stated that “anything that happened to me in the past has nothing to do with this case.” The trial judge, who observed, evaluated, and commented on Ms. Cebal-los’ demeanor, was in the best position to determine defense counsel’s request to strike her for cause. See Guzman, 934 So.2d at 17 (“Again, we emphasize that the trial judge was in the best position to observe [the prospective juror’s] demean- or, assess his candor, and determine whether [the prospective juror] was impartial.”); Mills, 462 So.2d 1075.
Accordingly, after a “thorough review of the record, we cannot find that the trial judge committed manifest error in determining that [the prospective juror] was competent to serve as a juror.” Guzman, 934 So.2d at 17. We affirm on all other issues raised on appeal.
Affirmed.