CORTIÑAS, J.
In early 2009, agents of the Naval Criminal Investigative Services (NCIS) in Key West launched “Operation Privateer” to investigate the alleged widespread illegal drug activity by both enlisted military personnel and local civilian employees of the Navy at bars and clubs in Key West. The establishments frequented by Naval personnel were dubbed “liberty venues” by investigators, who, by the time the investigation had begun, had already begun compiling a list of such venues together with a list of suspected participants in the drug trade. As part of the operation, NCIS agents Michael Soriano and Suzanne Mar-steller worked undercover, posing as siblings.
On March 30, 2009, Robert Coe (the Defendant) was at a Key West bar called the Bottle Cap. He was approached by agents Soriano and Marsteller. Over the course of the evening, the two agents played pool and had drinks with the De *1154 fendant. Over the next few days, agent Marsteller and the Defendant were involved in a series of marijuana sales in which the Defendant would provide agent Soriano with an ounce of marijuana in return for $110. The first transaction took place on April 1. Several days later, on April 6, 2009, the Defendant once again provided agent Soriano with one ounce of marijuana in exchange for $110, and again on April 16, 2009. On May 6, 2009, the Defendant was arrested and charged with three counts of selling marijuana within 1,000 feet of a place of worship.[1]
During jury selection, the Defendant raised challenges to three potential jurors. Juror number 139 identified herself as a public relations officer for the Key West Police Department, which had participated in Operation Privateer. She revealed that she had seen the Defendant’s name at some point, though she could not recall the details, nor did she remember any details regarding the Defendant’s arrest or alleged crimes. Juror number 65 was a retired Naval military police officer. He had also worked for the Monroe County Sheriffs Department, and was a licensed instructor for the Florida Department of Law Enforcement. He revealed during voir dire that his partner was currently employed on the Key West Navy Base with the Joint Inter-Agency Task Force, a federal task force that conducts drug interdiction in the international waters off South Florida. When asked by defense counsel whether he might be predisposed to listen more closely to witnesses with military or law enforcement backgrounds, Juror 65 said “I don’t know.” When asked if he would attach more credibility to such testimony, he replied “It’s hard to say, because you don’t know the situation or the people involved. I know some great military people and some that aren’t so great. So you have to base it on the facts of the case and who it is.” Juror number 31 revealed that he was employed as an active-duty supervisor with the Joint Inter-Agency Task Force, and stated that he would give “a little more credibility” to the testimony of law enforcement officers. During later questioning, Juror 31 stated that he would follow the law as instructed by the trial court and judge each witness individually and without bias. He further stated that he believed he could hear the case with an open mind, and that he would hold the State to its burden of proving every element of the offense beyond a reasonable doubt.
Each cause challenge was denied, and the Defendant also exhausted the six peremptory challenges he was allowed. After a two-day trial, the jury returned a verdict finding the Defendant guilty of the lesser-included offense of the sale of marijuana as to each of the three charges against him.
The Defendant argues that reversal is warranted because the trial court erred in not sustaining his cause challenges of the jurors who had given equivocal answers during voir dire. This argument fails. The Florida Supreme Court has held that “[t]here is hardly any area of the law in which the trial judge is given more discretion than in ruling on challenges of jurors for cause.” Cook v. State, 542 So.2d 964, 969 (Fla.1989). As this Court has repeatedly recognized, “[a] trial judge has a unique vantage point from which to evaluate potential juror bias and make observations of the juror’s voir dire responses, which cannot be discerned by this [C]ourt’s review of a cold appellate *1155 record.” Guzman v. State, 934 So.2d 11, 15 (Fla. 3d DCA 2006); see also Matarranz v. State, 99 So.3d 534, 538 (Fla. 3d DCA 2011). Consequently, “[i]t is within the trial court’s province to determine whether a challenge for cause should be granted ... and such a determination will not be disturbed on appeal absent manifest error.” Guzman, 934 So.2d at 14 (internal citations omitted); see also Morrison v. State, 818 So.2d 432, 442 (Fla.2002); Mills v. State, 462 So.2d 1075, 1079 (Fla.1985); State v. Williams, 465 So.2d 1229, 1231 (Fla.1985). A finding of manifest error is possible only when the record shows no basis for the decision. Guzman, 934 So.2d at 15 (“As long as there is support in the record for the trial court’s decision to deny a cause challenge, the decision will be upheld on appeal.”).
After a thorough review of the record, we cannot find that the trial judge committed manifest error in determining that Jurors 31, 65 and 139 were competent to serve as jurors. We therefore affirm the trial court’s denial of the Defendant’s cause challenges and also affirm all other issues on appeal.

. The Bottle Cap is within 1,000 feet of Key West’s St. Mary Star of the Sea Catholic Church.